**ROYAL NETHERLANDS STEAMSHIP COMPANY, Appellant,**

v.

**STRACHAN SHIPPING COMPANY et al., Appellees,**

**STRACHAN SHIPPING COMPANY, Appellant.**

v.

**ROYAL NETHERLANDS STEAMSHIP COMPANY, Appellant.**

No. 21622.

United States Court of Appeals Fifth Circuit.

June 27, 1966.

Rehearing Denied Aug. 5, 1966.

John P. Forney, Jr., Houston, Tex., William M. Kimball, New York City, Burlingham, Underwood, Barron, Wright & White, New York City, Eastham, Watson, Dale & Forney, Houston, Tex., for appellants.

E. D. Vickery, Jr., Carl Bue, Houston, Tex., Royston, Rayzor & Cook, Gus A. Schill, Jr., Houston, Tex., of counsel, for appellees.

Before JONES and THORNBERRY, Circuit Judges, and SLOAN, District Judge.

JONES, Circuit Judge.

B. A. Rawlinson, a longshoreman employed by the appellee, Strachan Shipping Company, was injured while participating in the loading of a vessel of the appellant, Royal Netherlands Steamship Company, at a dock in Houston, Texas. He was crushed between a load of pipe, which was being raised from the dock, and the vessel. Strachan's insurance carrier settled with Rawlinson on his Texas workmen's compensation claim. He then sued Royal Netherlands in a state court, claiming unseaworthiness of the vessel and negligence of its owner. Royal Netherlands removed the case to the Federal court, settled with Rawlinson, and filed a third-party complaint against Strachan seeking indemnity. The district court entered a summary judgment for Strachan on the ground that the discharge of its state compensation liability discharged it from all liability arising out of Rawlinson's injury. Rawlinson v. Koninklyke Nederlandsche Stoomboot Maalschappy, N.V., 197 F.Supp. 201. This court reversed, holding that under the Ryan doctrine,[1] a state rule of workmen's compensation law cannot prevent a shipowner from enforcing a contractual right of indemnity against a stevedore. Koninklyke Nederlandsche Stoomboot Maalschappy, N.V., etc., v. Strachan Shipping Company, 5 Cir. 1962, 301 F.2d 741, reh. den. 304 F.2d 545.

The injuries of Rawlinson were sustained while he was engaged, with others, in loading a cargo of pipe on the SS Mentor, owned by Royal Netherlands. A length of pipe was being raised from the dock to the ship by two winches. It appeared to C. E. Hartley, one of Strachan's winchmen, that one end of the pipe might strike a shroud. He stopped his winch and signaled W. E. Hedigar, Strachan's other winchman, to stop his winch. There is a dispute as to whether Hedigar missed the signal and did not attempt to stop the winch, or the winch was defective and did not respond to the winchman's effort to stop it. The winch continued to operate causing the low end of the pipe to swing in against the ship. Rawlinson was caught between the pipe and the ship and the resulting injuries initiated this litigation. Rawlinson's action against Royal Netherlands, in which he asserted both negligence and unseaworthiness, was settled by the payment of $20,000 by Royal Netherlands. It reserved the right to seek indemnity from Strachan. As has been noted, its right to do so was established on the prior appeal.

At the conclusion of the trial the court submitted special interrogatories under Rule 49(a), Fed.Rules Civ.Proc. 28 U.S. C.A., at the request of Royal Netherlands and in the form requested by it. Objections to the interrogatories made by Strachan were overruled and interrogatories requested by Strachan were refused. The questions propounded and the answers returned are as follows:

1. Was it reasonable for Royal to settle Mr. Rawlinson's suit?

You will answer "Yes" or "No".

Answer: Yes

2. Was the high boom winch unseaworthy?

You will answer "Yes" or "No".

Answer: No

3. (a) Did the high boom winchman continue to operate the winch

1. Ryan Stevedoring Co. v. Pan-Atlantic Corporation, 350 U.S. 124, 76 S.Ct. 232, 100 L.Ed. 133; Weyerhaeuser Steamship Co. v. Nacirema Operating Co., 355 U.S. 563, 78 S.Ct. 438, 2 L.Ed.2d 491.

after he knew that the winch was defective?

Answer "Yes" or "No".

Answer: Yes

(b) If so, was this one of the contributing causes of the accident?

You will answer "Yes" or "No".

Answer: No

4. (a) Did the gang foreman fail to stop the high boom winchman from continuing to operate the winch after the gang foreman knew or should have known that the winch was defective?

You will answer "Yes" or "No".

Answer: Yes

(b) If so, was this one of the contributing causes of the accident?

You will answer "Yes" or "No".

Answer: No

5. (a) Should Strachan have provided one signalman to give all signals necessary to get the pipe which struck Mr. Rawlinson onto the ship?

You will answer "Yes" or "No".

Answer: Yes

(b) If so, was the failure to provide the signalman one of the contributing causes of the accident?

You will answer "Yes" or "No".

Answer: Yes

6. (a) Did either the outrigger winchman or the high boom winchman move the pipe which struck Mr. Rawlinson without receiving a signal to do so?

You will answer "Yes" or "No".

Answer: No

(b) If so, was this one of the contributing causes of the accident?

You will answer "Yes" or "No".

Answer: No

7. (a) Did either the outrigger or high boom winchman move the pipe which struck Mr. Rawlinson without being able to see whether or not Mr. Rawlinson was between the pipe and the ship?

You will answer "Yes" or "No".

Answer: Yes

(b) If so, was this one of the contributing causes of the accident?

You will answer "Yes" or "No".

Answer: Yes

8. (a) Was there a tag line on the pipe which struck Mr. Rawlinson?

You will answer "Yes" or "No".

Answer: No

(b) If not, was this one of the contributing causes of the accident?

You will answer "Yes" or "No".

Answer: Yes

9. Was Strachan's failure to use a double sling to load the pipe which struck Mr. Rawlinson one of the contributing causes of the accident?

You will answer "Yes" or "No".

Answer: No

10. Did either the outrigger or high boom winchman raise the pipe which struck Mr. Rawlinson in such a manner that there was danger that the pipe would strike the shroud?

You will answer "Yes" or "No".

Answer: Yes

11. (a) Did Strachan negligently bring into play any defective condition of the high boom winch?

You will answer "Yes" or "No".

Answer: No

12. Was a contributing cause of the accident the failure of Mr. Rawlinson to exercise reasonable care for his own safety?

You will answer "Yes" or "No".

Answer: Yes

After the jury had retired, a note from the jury was sent in, making this inquiry:

"Some questions that follow question No. 2 seem to assume that question No. 2 be answered in the affirmative. However, if No. 2 is answered in the negative, answers to some associated questions seem to be contradictory. Please clarify."

After some discussion, and over the objection of Strachan, the court gave this supplemental instruction:

"You are instructed to answer each question individually on the basis of the evidence and without regard to the effect which any answer may have upon the judgment to be entered by the court."

Royal Netherlands and Strachan each moved for judgment on the verdict. The motion of Strachan was granted. Royal Netherlands has appealed, and on appeal contends that the cause of the longshoreman's injury was attributable to the stevedore and its employees. It insists that the jury verdict made findings which required a judgment against Strachan, the stevedore. While insisting upon the correctness of the judgment and claiming that the verdict required the entry of the judgment for it, Strachan has attempted to take what it has called a "conditional and protective cross-appeal." In its support of this cross-appeal it urges that the district court's charge and interrogatories are erroneous. But by a sort of Hudibrastic reasoning, Strachan argues that because Royal Netherlands prepared the instructions and interrogatories it is estopped from challenging the court's judgment.

The framing of questions in such form as to anticipate or assume particular answers to prior questions, coupled with the court's instruction, given in response to an inquiry by the jury, that each question be answered without regard to the effect of any answer upon the court's judgment, undoubtedly created confusion in the minds of the jurors. This confusion, no doubt, caused the inconsistency and conflicts in the jury's responses to the questions as submitted. The jury found that the high boom winch was not unseaworthy but was required to assume that it was defective. The jury found that Strachan should have provided a signalman and its failure to do so was a contributing cause of the accident, but that the winchman had not moved the pipe without signals. Other comparisons might be made. The inconsistencies and conflicts cannot be reconciled.

 Where the answers of the jury, upon which the court's judgment depends, are so ambiguous, or so conflicting and inconsistent that they cannot be reconciled, a special verdict will not support a judgment and the cause must be reversed for a new trial. Martin v. Gulf States Utilities Company, 5th Cir. 1965, 344 F.2d 34; R. B. Company v. Aetna Insurance Company, 5th Cir. 1962, 299 F.2d 753; Missouri Pacific Railroad Company v. Salazar, 5th Cir. 1958, 254 F.2d 847; Mounger v. Wells, 5th Cir. 1929, 30 F.2d 521. Such is the case here. The judgment of the district court is reversed and the cause remanded for a new trial. The cross-appeal falls with the reversal on the main appeal.

Reversed and remanded.