**LOFFLAND BROTHERS COMPANY,**
Appellant,

v.

**Everett B. ROBERTS et al., Appellees.**

**O. D. CASING CREWS, INC., Appellant,**

v.

**CONTINENTAL OIL COMPANY,**
Appellee.

No. 23835.

United States Court of Appeals
Fifth Circuit.

Aug. 9, 1967.

Rehearing En Banc Denied
Oct. 2, 1967.

Certiorari Denied Jan. 15, 1968.
See 88 S.Ct. 778.

Robert B. Acomb, Jr., A. R. Christovich, Jr., New Orleans, La., for appellant.

George B. Matthews, Charles E. Lugenbuhl, August J. Bubert, New Orleans, La., for appellee.

Before JONES, GEWIN and SIMPSON, Circuit Judges.

GEWIN, Circuit Judge:

This rather complex, multiparty suit arose out of an accident which severely injured Everett B. Roberts while he was engaged in a casing operation on a fixed offshore drilling platform located on the Outer Continental Shelf off the coast of Louisiana. The platform was owned and operated by Continental Oil Company (Continental), and the drilling operations were being performed by Loffland Brothers Company (Loffland) pursuant to a contract with Continental. O. D. Casing Crews, Inc. (O. D. Casing) was the casing contractor and Roberts' employer. Casing operations were performed under a standing contract between O. D. Casing and Continental. Roberts brought this suit against Loffland and Continental in the United States District Court for the Eastern District of Louisiana for recovery of damages resulting from personal injuries sustained when the stabbing board on which he was working fell some forty feet to the platform floor:[1] Loffland filed third party claims for indemnity against O. D. Casing and Continental. Continental also filed a claim for indemnity against O. D. Casing. Finally, American Mutual Liability Insurance Company (American), the compensation insurer of O. D. Casing, intervened for the amount of com-

---

1. The original suit was filed against several additional parties, but they were dismissed prior to trial and are not involved in this appeal.

pensation and medical expenses paid to Roberts.

Roberts' cause was tried by a jury and a verdict on special interrogatories was returned in favor of Continental and against Loffland. A judgment was entered against Loffland in the amount of $137,081.05 plus costs in accordance with the verdict. American was awarded a judgment against Roberts in the amount of $19,135.46. The district court dismissed Loffland's third party claim against both Continental and O. D. Casing. By supplemental judgment, the district court awarded Continental its attorneys' fees and costs under its contract with O. D. Casing. Loffland appeals from the entire judgment and O. D. Casing appeals from that portion of the judgment awarding Continental attorneys' fees and costs. We affirm.

Early in the evening of February 5, 1962, Roberts, other members of the casing crew, and a Loffland drilling crew left Grande Isle, Louisiana, by boat for the Continental drilling platform. The platform was a fixed structure embedded in the Outer Continental Shelf some fifteen to twenty miles off the Louisiana coast. Roberts and the other members of the O. D. Casing's crew were going out to run casing, or pipe, in the well hole. Roberts was employed as a stabber. That job required him to work upon a movable board located within the derrick proper. The board moved on two vertical pipes and was lifted by means of an air hoist. The board is used mainly in casing operations and permits a man, the stabber, to hold the upper portion of a joint or piece of casing while the lower end of the joint is attached to the joint below. The exact position of the stabbing board varies with the length of the joint of casing being worked, but is usually positioned approximately forty feet above the floor of the platform.

The seas were beginning to run high as the two crews left Grande Isle, and radio broadcasts received on the boat reported the wind velocity to be 40 to 45 miles per hour. Upon their arrival at the platform the men changed clothes and ate. At about 11:00 P.M. they reported to the rig floor and began preparations for the casing operation. There was some general discussion with respect to the weather and Loffland's driller, Theo Perrin, testified that he told Continental's drilling supervisor, Charles E. Smith, that he thought the wind was too high for casing operations to be safely performed. Several other members of both the drilling and casing crew testified that they had worked in winds as high and higher than the wind that night. In any event, Smith ordered the casing operation to proceed.

Roberts and other members of the casing crew took the stabbing board down from its stored position and prepared it for use. Roberts then rode the board up some forty feet. He attached his safety line to the railing on the board prior to taking the board up, and testified he intended to attach the line to a fixed portion of the derrick after he had determined the exact position from which he would have to work. When he reached the forty foot point, he stopped the board, disconnected the safety line from his belt, and came down the derrick ladder to the platform floor, walking a girder to reach the ladder. He put on a jumper coat and took off his hard hat and replaced it with a cap. He testified that he took off the hard hat because he was afraid that the wind would blow it off and injure someone or that the chin-strap would choke him due to the high wind.

Roberts also testified that he told the driller, Perrin, to watch the traveling block as it was running close to the stabbing board. The traveling block is a hoist or large hook, weighing several tons, which is used to raise and lower drill pipe or casing. The block is powered by the drawworks which are located on the floor of the platform and operated by the driller. The block is suspended from the crown of the derrick by several lines of cable which run through pulleys or sheaves in both the crown and in the block. The cable is attached to the drawworks at one end, and the other end, running over the last sheave in the

crown, is attached to the floor of the platform. This latter portion of the cable is known as the "dead-line" as it does not move. Several of the witnesses testified that either Perrin, Smith, or Loffland's foreman told them to "snubb off" the deadline so as to reduce the sway in the block. Snubbing off the deadline involves attaching a line from a fixed part of the derrick to the deadline.

After the conversation with Perrin, Roberts climbed back up the ladder and got on the stabbing board. He then re-attached the safety line to his belt. At that moment or immediately thereafter he saw the traveling block swing under the board. He shouted to the driller but was too late. The block hit the underside of the board and raised it upward. The block then slipped out from under the board causing it to fall back to its original position. The force of the fall broke either the sheave or the eye bolt holding the board and it fell some forty feet to the floor of the platform. Roberts fell with the board and suffered severe and substantial injuries to his head, legs and feet. The roughnecks who had been assigned to snubb off the dead-line testified that the traveling block had been raised before they could finish snubbing off the line.

After the accident in question occurred, two joints of casing were run, but they were subsequently pulled out as the wind prevented the crews from finishing the job. The drill pipe was then replaced in the hole and circulated. The casing operation was completed the following day.

The jury found that Roberts' injuries were proximately caused by the negligence of Perrin in starting the upward movement of the traveling block before the snubbing of the dead-line had been completed and before Roberts had an opportunity to tie his safety belt to a fixed part of the derrick. It absolved Smith, and therefore Continental, of any negligence. In addition, it found Roberts was contributorily negligent to the extent of 10% of the damages. The district court dismissed Loffland's claims against

Continental on the ground that the jury had not found Continental guilty of any negligence. The court also dismissed the third party claim against O. D. Casing. It held that O. D. Casing was not liable on an indemnity theory for the negligence of Roberts and that since this was an action in admiralty Loffland was not entitled to contribution. Finally, the court held that O. D. Casing was liable under the indemnity clause of its contract with Continental for Continental's attorneys' fees and costs.

On this appeal Loffland contends for the first time that under the Outer Continental Shelf Lands Act Louisiana law applies and that it is entitled to judgment since the jury found Roberts contributorily negligent. Loffland also asserts that the district court misled the jury and caused it to focus on the alleged negligence of Perrin by submitting the special interrogatories relating to Perrin's negligence in specific terms while submitting the interrogatories relating to Roberts' negligence in general terms, that the answers to the interrogatories are conflicting, that the supplemental instructions as to damages were confusing, and that the court erred in not telling the jury that Roberts had received compensation for his medical bills. It further alleges that it was entitled to a recovery over against O. D. Casing on an implied warranty of workmanlike service theory, and that the court erred in not submitting the negligence of O. D. Casing to the jury. Finally, O. D. Casing contends that it was not liable for attorneys' fees and costs under its contract with Continental.

The Outer Continental Shelf Lands Act, 43 U.S.C. § 1333, extends the Constitution, laws and jurisdiction of the United States to the seabed and soil of the Outer Continental Shelf and to all artificial islands and fixed structures erected on the Outer Continental Shelf. To the extent that the laws of the adjacent states are applicable and not inconsistent with the Act or other laws of the United States, the Act adopts such state laws as the law of the United States for that por-

tion of the Shelf which lies adjacent to the state.[2] Loffland contends that since the accident which gave rise to this suit occurred off the coast of Louisiana, the Act requires the application of Louisiana law to this case and not the comparative negligence of maritime law.[3] Therefore, it continues, Roberts is barred from recovering because the jury found him contributorily negligent.[4]

■ In Pure Oil Co. v. Snipes, 293 F. 2d 60 (5 Cir. 1961) this Court carefully reviewed the Outer Continental Shelf Lands Act and concluded that Congress deemed the hazards presented by the offshore drilling platforms to be maritime in nature. We therefore held that under the Act federal maritime law was to apply to torts occurring on these offshore platforms. That decision has been consistently followed by this Court. See, e. g., Movible Offshore Co. v. Ousley, 346 F.2d 870 (5 Cir. 1965); Ocean Drilling & Exploration Co. v. Berry Bros. Oilfield Service, Inc., 377 F.2d 511 (5 Cir. 1967). Loffland seeks to distinguish Snipes on the ground that the plaintiff there fell from the platform to the sea. It argues that traditionally the location of the tort

has determined whether or not maritime law applied. Since Roberts' injury was consummated solely on the platform, maritime law does not apply. We disagree. In Snipes the Court noted that the historical tests for determining whether a tort was within the admiralty jurisdiction of the federal courts were not applicable in cases involving torts occurring on offshore drilling platforms since Congress had directed in the Outer Continental Shelf Lands Act that maritime law be applied. 293 F.2d at 65–66. See Movible Offshore Co., supra; Cf. Magnolia Towing Co. v. Pace, 378 F.2d 12 (5 Cir. 1967). Thus, it is clear that the decisions of this Court require the application of maritime law to this case. We can find no valid reasons to depart from the rationale and holdings of those decisions, and we decline to do so.

Loffland next contends that the district court confused and misled the jury by improperly framing the interrogatories. It argues that the court caused the jury to unduly focus on the alleged negligence of its driller, Perrin, by submitting the interrogatories relating to his negligence in specific terms, while

---

2. The Outer Continental Shelf Lands Act, in pertinent part, reads:

"(a)(1) The Constitution and laws and civil and political jurisdiction of the United States are extended to the subsoil and seabed of the outer Continental Shelf and to all artificial islands and fixed structures which may be erected thereon for the purpose of exploring for, developing, removing, and transporting resources therefrom, to the same extent as if the outer Continental Shelf were an area of exclusive Federal jurisdiction located within a State: * * *"

"(2) To the extent that they are applicable and not inconsistent with this subchapter or with other Federal laws and regulations of the Secretary [of the Interior] now in effect or hereafter adopted, the civil and criminal laws of each adjacent State as of August 7, 1953 are declared to be the law of the United States for that portion of the subsoil and seabed of the outer Continental Shelf, and artificial islands and fixed structures erected thereon, which would be within the

area of the State if its boundaries were extended seaward to the outer margin of the outer Continental Shelf, * * *." 43 U.S.C. § 1333(a)(1) and (2) (1964).

3. Loffland raises this point for the first time here on appeal. No objection based on this contention was taken to either the district court's charge or the special interrogatories when the court submitted the case to the jury on the basis of federal maritime law. Loffland's trial memorandum was based on maritime law.

4. In its brief Loffland quotes extensively from the opinion of this Court in Guess v. Read, 290 F.2d 622 (5 Cir. 1961), but it is difficult to see how that opinion supports its position. In Guess v. Read this Court held that the Louisiana Direct Action Statute did not apply in a Death on the High Seas action arising out of the crash of a helicopter into the sea while returning from an offshore platform. The Court concluded that the Outer Continental Shelf Lands Act did not apply as it was concerned with the seabed, soil and the artificial islands thereto affixed.

submitting the interrogatories relating to the negligence of Roberts in general terms. It claims that the interrogatories forced the jury to "zero in" on the alleged negligence of Perrin as ten of the twenty-three interrogatories related to his negligence. The attention of the jury, according to the argument, was further focused on Perrin's negligence by the Court's instruction to the jury that it was to consider only the issues submitted and not any other matter raised during the course of the trial. Roberts contends that the manner in which the interrogatories were framed did not prejudice but benefitted Loffland. He asserts that the Court limited him to four acts of negligence on the part of Loffland while Loffland could argue every possible act of negligence on his part raised by the evidence.[5]

■ The district court submitted the special interrogatories in the manner indicated in order to facilitate the disposition of the third party claims for indemnity. It believed that it was necessary to know what acts on the part of Loffland and/or Continental the jury might find to be negligent in order to properly handle the question of indemnity. See Weyerhaeuser S.S. Corp. v. Nacirema Operating Co., 355 U.S. 563, 78 S.Ct. 438, 2 L.Ed.2d 491 (1958). As a result it was necessary to pose the issues of negligence on the part of Loffland in specific terms. No such necessity existed with respect to any possible contributory negligence on the part of Roberts. Under Rule 49, Fed.R.Civ.P., the submission of special interrogatories is left to the sound discretion of the district court. New Orleans & N. E. R. R. v. Anderson, 293 F.2d 97 (5 Cir. 1961), and cases cited therein. Although it might have been preferable to submit all the issues of negligence in terms of specific acts of negligence, we are unable to conclude that the district court abused its discretion in submitting the interrogatories in the manner it did.

■ Similarly we conclude that the court did not confuse the jury or otherwise err in submitting the supplemental instructions on damages. The instructions and new interrogatories were submitted after the court received a request from the jury for further assistance in regard to calculating damages. The instructions were reasonable, clear, and designed to assist the jury in a matter which it, the parties, and the court found difficult. The instructions were submitted after an extended colloquy between the court and the attorneys for all the parties. The attorney for Loffland, though suggesting a different manner in which to answer the jury's question, did not object to the instructions and interrogatories submitted. We find no error in the manner in which the court handled this obviously difficult and vexing problem.

■ Loffland also asserts that the answers to the interrogatories were conflicting. The jury was asked to determine whether Perrin was negligent in (1) failing to maintain a proper lookout, (2) in starting the upward movement of the traveling block before Roberts had an opportunity to attach his safety belt to a non-movable part of the derrick, (3) in failing to stop the traveling block with a reasonable degree of celerity, and (4) in commencing the upward movement of the block before the snubbing operation was completed. The jury found Perrin negligent in starting the upward movement of the traveling block before Roberts had an opportunity to tie his safety belt to a fixed part of the derrick and before the snubbing operation was completed. It found that Perrin maintained a proper lookout and stopped the block with a reasonable degree of promptness or celerity. Loffland argues that Perrin could not have maintained a proper lookout and yet have been negligent in starting the block before Roberts had the opportunity to tie his safety belt to a non-movable part of the derrick. Further, if Perrin stopped the block with

5. To paraphrase the district court, Roberts was limited to four possible acts of negligence while Loffland could "cover the waterfront."

a reasonable degree of celerity, he could not have been negligent in starting the block before the snubbing operation was completed. In addition, it contends that the evidence indicated that Roberts did not intend to tie his safety line to a fixed part of the derrick.

The evidence adduced at trial indicated that Perrin was required to watch both the traveling block and the joint of casing while he was raising the block. At the time of the accident, the joint of casing was still dragging on the floor of the V-door, through which it is brought into the derrick proper. Thus, he was required to look up into the derrick, and down at the V-door while raising the block and casing into position. The jury could readily have construed the interrogatory relating to lookout to refer to the actual raising of the block and understood it to ask whether Perrin was negligent in not ascertaining that the block was swinging under the stabbing board. So construed the finding that he maintained a diligent lookout does not conflict with the finding that he was negligent in starting the upward movement of the block before Roberts tied his safety line to the derrick. The assertion that Roberts never intended to attach his safety line to a fixed portion of the derrick is also without merit. Roberts clearly testified that he intended to tie his safety line to the pipes on which the stabbing board moved after he finally positioned the board but that the accident occurred before he had an opportunity to do so. Any doubt, raised by cross-examination, as to the veracity of his statement was for the jury to consider in determining his credibility. Its decision is supported by the record and may not be disturbed on appeal.

Finally, we find nothing inconsistent in the jury's conclusion that Perrin stopped the block with a reasonable degree of celerity and that he was negligent in starting the upward movement of the block before the snubbing operation was finished. There is no evidence in the record to indicate that the snubbing of the dead-line had any effect on a driller's ability to stop the traveling block. Nor is that finding inconsistent with the conclusion that he kept a proper lookout. The snubbing operation was being performed high in the derrick and the jury could easily have believed that Perrin was not obligated to look high into the derrick when performing the difficult and dangerous operation of lifting a joint of casing.[6] While we recognize that conflicting answers to interrogatories require a new trial, Royal Netherlands S. S. Co. v. Strachan Shipping Co., 362 F.2d 691 (5 Cir. 1966), we believe the answers to the interrogatories in this case are easily reconciled and a new trial is not required.[7]

The final point raised by Loffland with respect to the judgment in favor of Roberts relates to the medical payments and compensation received from American. The trial judge refused to inform the jury that American was in the suit or that Roberts had received any medical insurance payments or compensation. Loffland contends that as a result the jury might have believed that Roberts was not compensated for his medical bills during the four years it took for his case to come to trial, and that belief prejudiced Loffland in its eyes. We do not believe the court erred in withholding from the jury the fact that Roberts received medical payments.

---

6. The answers might be resolved on the basis of the evidence in other ways. For example, the jury might have concluded that Perrin kept a proper lookout, saw that Roberts had not tied his line to a fixed portion of the derrick, and was therefore negligent in raising the block before Roberts had the chance to tie his line to the derrick. It suffices to note that they are not irreconcilably in conflict.

7. Even if the first two answers are conflicting, the finding that Perrin started the upward movement of the derrick before the snubbing operation was complete is in no way inconsistent with any of the other findings. That conclusion alone would support the judgment in favor of Roberts.

If the negligence of Loffland or Continental proximately caused Roberts' injuries, then it was liable for the full extent of the damages found by the jury. Those damages included his medical expenses as well as other elements of damage. That Roberts received compensation from another source to meet those medical bills had no bearing on the issue of Loffland's or Continental's liability to Roberts. The fact that he had received such compensation from American was irrelevant. Gypsum Carrier, Inc. v. Handelsman, 307 F.2d 525, 4 A.L.R.2d 517 (9 Cir. 1962). American was only a party to this suit as an intervenor and its right to recover depended upon Roberts' right to a judgment. The jury was not concerned with who paid the medical expenses, or who would receive that portion of the judgment attributable to medical expenses. We are, therefore, firmly convinced that the district court's refusal to apprise the jury that Roberts had received compensation for his medical expenses was correct.

■ We turn now to Loffland's claims against O. D. Casing. First it asserts that the district court erred in not submitting the question of negligence on the part of O. D. Casing to the jury. We have carefully reviewed the evidence in this case, and conclude that the record is devoid of any indication of negligence on the part of any employee of O. D. Casing, except that of Roberts, and the question of his negligence was submitted to the jury. Absent any evidentiary basis upon which the jury could have found O. D. Casing negligent, the Court was clearly correct in refusing to submit the matter to the jury.

■ Loffland also contends that the court erred in not allowing O. D. Casing to argue to the jury after it had made an opening statement, interrogated witnesses, and generally participated in the trial. The district court refused to allow O. D. Casing to make a closing statement because it was not a party to any of the issues submitted to the jury. Conse-

quently, it would have had to argue in support of one of the other parties. We therefore fail to see how this action by the district court harmed Loffland in any way. If anyone was harmed it was O. D. Casing. Accordingly, we find Loffland without standing to raise this objection.

We come now to the question of indemnity. Loffland argues that it was entitled to seek indemnity from O. D. Casing on the theory of an implied warranty of workmanlike service. It argues that O. D. Casing impliedly warranted under its contract with Continental to perform the casing operation in a workmanlike manner, and that Loffland, as a contractor on the offshore platform, was a third-party beneficiary of the contract between O. D. Casing and Continental. Loffland rests its argument on Crumady v. The Joachim Hendrik Fisser, 358 U.S. 423, 79 S.Ct. 445, 3 L.Ed.2d 413 (1959) and Weyerhaeuser S. S. Co. v. Nacirema Operating Co., 355 U.S. 563, 78 S.Ct. 438, 2 L.Ed.2d 491 (1958). Those two decisions are part of the line of cases defining, under the *Ryan*[8] doctrine, the rights of a shipowner to seek indemnity from a contractor employed on the vessel for a breach of the contractor's implied warranty of workmanlike service. The doctrine as first announced in *Ryan*, supra, allowed a shipowner indemnity from a stevedoring contractor for a breach of the stevedore's implied warranty of workmanlike service which resulted in the shipowner's liability to an employee of the stevedoring contractor for an unseaworthy vessel. Subsequent decisions made it clear that the right was contractual in nature, *Weyerhaeuser*, supra, and that recovery may be had for non-negligent as well as negligent breaches of the warranty. Italia Societa Per Azioni de Navigazione v. Oregon Stevedoring Co., 376 U.S. 315, 84 S.Ct. 748, 11 L.Ed.2d 732 (1964). Where a stevedore breaches the warranty in such a manner as to render the shipowner liable, the shipowner is entitled to indemnity absent

8. Ryan Stevedoring Co. v. Pan-Atlantic S. S. Corp., 350 U.S. 124, 76 S.Ct. 232, 100 L.Ed. 133 (1956).

conduct on its part to preclude recovery even though the ship was negligent or otherwise contributed to its liability. *Weyerhaeuser,* supra, 355 U.S. at 567, 78 S.Ct. 438. In addition, the ship and the shipowner are deemed to be third-party beneficiaries of any stevedoring contract entered into by a charter party or consignee of cargo which provides for stevedoring services to be performed on the ship. *Crumady,* supra; Waterman S.S. Corp. v. Duggan & McNamara, Inc., 364 U.S. 421, 5 L.Ed.2d 169 (1960).

However, the offshore platform involved in this case was stipulated not to be a vessel, and Roberts was consequently not a seaman. Dronet v. Reading & Bates Offshore Drilling Co., 367 F. 2d 150 (5 Cir. 1960); Texas Co. v. Savoie, 240 F.2d 674 (5 Cir.), cert. denied, 355 U.S. 840, 78 S.Ct. 49, 2 L.Ed.2d 51 (1957). Thus, the doctrine of seaworthiness has no application to this case, and Roberts could only recover on the basis of the negligence of those engaged on the platform. *Ocean Drilling & Exploration Co.,* supra. Since Loffland was an independent contractor, the negligence of either Continental or O. D. Casing may not be imputed to it so as to render it liable for their negligence, and Loffland could only be liable to Roberts for its own negligence. Similarly, Continental could only be liable to an injured party for its own negligence and not the negligence of any other party. Thus, the situation existing on these offshore platforms is substantially different from the situation which exists where a vessel is involved. The shipowner owes a non-delegable duty to provide a seaworthy vessel and its liability is not dependent on a finding of fault. It may be held liable as a result of an unseaworthy condition caused by a stevedore or other independent contractor. *Oregon Stevedoring Co.,* supra. Recognizing this unique obligation on the part of a shipowner, we have held that the *Ryan* doctrine is closely tied to a vessel and this obligation which the shipowner owes to those employed on the vessel. *Ocean Drilling & Exploration Co.,* supra; Central Stikstof Verkoopkanter,

N.V. v. Walsh Stevedoring Co., 380 F.2d 523 (5 Cir. 1967). We are accordingly extremely hesitant to extend the burdensome *Ryan* doctrine to situations not substantially similar to those which gave birth to the doctrine. The obligations which the owner of an offshore drilling platform owes to those employed on it are not sufficiently similar to those owed by a shipowner to a seaman to permit the extension of the doctrine. Halliburton Co. v. Norton Drilling Co., 302 F.2d 431 (5 Cir. 1962); *Ocean Drilling & Exploration Co.,* supra. In addition, we have held that an independent contractor employed at an oilwell, such as Loffland, is not a third-party beneficiary to contracts between the well owner or lessee and another independent contractor. Therefore, we conclude that Loffland may not recover against O. D. Casing on a contract theory of indemnity.

Moreover, we do not believe that Loffland can maintain its action for indemnity against O. D. Casing on a tort theory of indemnity. As indicated earlier, except for the negligence of Roberts, the record fails to establish any negligence on the part of any other employee of O. D. Casing. Since we held in Drewery v. Daspit Bros. Marine Divers, Inc., 317 F.2d 425 (5 Cir. 1963) that the negligence of an injured employee may not be imputed to his employer so as to render the employer liable in indemnity for the injuries sustained by the employee, Loffland may not recover on the basis of Roberts' negligence. Indeed, Loffland's liability did not result in any way from Roberts' negligence, but was mitigated by it. It would truly be adding legal fiction to legal fiction to hold O. D. Casing liable in indemnity on such a theory. *Drewery,* supra. We further find Loffland's reliance on Lusich v. Bloomfield S. S. Co., 355 F.2d 770 (5 Cir. 1966) to be misplaced. There we held that the negligence of an employee of a contractor engaged by the ship to make repairs on the vessel was a factor to be considered in determining whether the contractor breached its implied warranty of workmanlike service. The case is dis-

tinguishable on its facts and is inapposite. The ship owed the employee the duty of providing a seaworthy vessel, and as a consequence the contractor impliedly warranted to perform in a workmanlike manner. Thus, to the extent the employee was negligent, the contractor breached its implied warranty. No such similar circumstances exist here. O. D. Casing owed Loffland no duty beyond that of performing without negligence. There was no negligence on the part of O. D. Casing which resulted in Loffland's liability, and Loffland may not seek indemnity. Union Stock Yards Co. of Omaha v. Chicago, B. & O. R. R., 196 U.S. 217, 25 S.Ct. 226, 49 L.Ed. 453 (1905); United States Fidelity & Guaranty Co. v. Virginia Eng'r. Co., 213 F.2d 109, 63 A.L.R.2d 1114 (4 Cir. 1954). Cf. Halcyon Lines, Inc. v. Haenn Ship Ceiling & Refitting Corp., 342 U.S. 282, 72 S. Ct. 277, 96 L.Ed. 319 (1952).[9]

■ We also conclude that Loffland's claim for indemnity from Continental is barred under the contract between those parties. The indemnity provisions of the contract specifically provide that no right of indemnity shall exist except where either Loffland or Continental is held liable to an employee of the other party. Roberts was employed by O. D. Casing and no contention is made that he was an employee of Continental. The language of the contract is clear and unambiguous. It applies to the situation here presented, and precludes recovery for indemnity on the part of Loffland.

■ Loffland's last contention is that American is barred, under the waiver of subrogation provision in the contract between O. D. Casing and Continental, from seeking to recover the medical and compensation payments made to Roberts. The judgment in favor of American was rendered against Roberts and not against Loffland. Therefore, Loffland was in no way harmed by the intervention of American or by the award to American, and it can not complain of it here. The contention is accordingly without merit.

■ Finally we come to O. D. Casing's appeal of the judgment awarding Continental attorneys' fees and costs. The contract between Continental and O. D. Casing provided that each shall hold the other harmless against any suit by an employee of the other which arose out of or was incident to the work to be performed under the contract.[10] O. D. Casing argues that Continental could have been held liable under the facts of

9. We note that in Gooden v. Sinclair Refining Co., 378 F.2d 576 (3 Cir. 1967), sub nom. Gooden v. Texaco, Inc., 378 F. 2d 576 (June 8, 1967), the Third Circuit held that contribution may be required where two ships are obligated to provide a seaman with maintenance and cure for a disability resulting from the same injury. The rationale of that opinion, however, clearly indicates that the right to contribution is dependent upon vagaries of the law of maintenance and cure. We do not believe, therefore, that the decision portends a wholesale revision of the law of contribution in admiralty.

10. The indemnity clause of the contract here in issue reads as follows:
"INDEMNITY
*       *       *       *       *
B. Contractor [O. D. Casing] agrees to indemnity [sic] and hold harmless Company [Continental], and any or all co-lessees of Company who wholly or

partially bear the cost of operations hereunder, and any or all agents, directors, officers, employees, or servants of Company or of such co-lessees, against any and all claims, demands, or suits (including, but not limited to, claims, demands, or suits for bodily injury, illness, disease, death, or loss of services, property or wages) which may be brought against Company or against Company and such co-lessees, whether one or more, or in which Company or such co-lessees, whether one or more, or in which any and all such agents, directors, officers, employees, or servants of Company or of such co-lessees may be named party defendant or parties defendant, as the case may be, by any employee of Contractor, or the legal representative or successor of such employee, in anywise arising out of or incident to the work to be performed under this contract, * * * and even though occa-

this case only if the jury found Smith to be negligent in ordering the casing operations to proceed. Since the contract related to the running of casing, O. D. Casing asserts that any liability on the part of Continental would not have arisen out of or be incident to the work to be performed under the contract, i.e., the running of casing. Therefore, it concludes, the indemnity clause is not applicable and it is not liable for the attorneys' fees and costs incurred by Continental. We can not agree. The construction of the contract advanced by O. D. Casing is strained and at variance with the ordinary and common sense meaning of the language. Any liability on the part of Continental would have resulted from the casing operations with which the contract was concerned. Smith's order to proceed with the casing operation was directly related to the work to be performed under the contract and can not be cast in any other light. While indemnity clauses are to be strictly construed, Halliburton Oil Well Cementing Co. v. Paulk, 180 F.2d 79 (5 Cir. 1950), we believe that the indemnity clause here in issue clearly and unmistakably covers the situation here presented. Accordingly, we conclude that O. D. Casing is obligated under its contract with Continental to reimburse Continental for its attorneys' fees and costs.

We have considered the other contentions raised by Loffland, and find them without merit. The judgment of the district court is

Affirmed.

## ON PETITION FOR REHEARING EN BANC

PER CURIAM:

The Petition for Rehearing is denied and no member of this panel nor Judge in regular active service on the Court having requested that the Court be polled on rehearing en banc, Rule 25a, subpar. (b), the Petition for Rehearing En Banc is denied.

sioned [sic], brought about, or caused in whole or in part by the negligence of Company, its agents, directors, of-