**Ella Mae Dubois DORE, Individually and as Natural Tutrix of and for and on behalf of her minor children, Rodney James Dore, Vickie Ann Dore and Jo Ella Dore, Appellants,**

v.

**The LINK BELT COMPANY, et al., Appellees.**

**No. 24370.**

United States Court of Appeals
Fifth Circuit.

March 25, 1968.

Rehearing Denied May 15, 1968.

Alfred S. Landry, New Iberia, La., for appellants.

James E. Diaz, Lafayette, La., for Link Belt Co.

H. Lee Leonard, Lafayette, La., for Road Equip. Co.

Before GEWIN, BELL and AINSWORTH, Circuit Judges.

AINSWORTH, Circuit Judge:

The issue with which we are concerned is whether the Death on the High Seas Act, 46 U.S.C. § 761 et seq.,[1] is the exclu-

1. The pertinent provisions of the Death on the High Seas Act follow:
46 U.S.C. § 761:

"Whenever the death of a person shall be caused by wrongful act, neglect, or default occurring on the high seas be-

sive remedy of claimants in an action growing out of the death of an oil field worker which occurred on a stationary offshore drilling platform on the outer Continental Shelf of the Gulf of Mexico beyond a marine league from the Louisiana shore. Plaintiffs, who are the surviving wife and children of the deceased worker, contend that the Act, which provides for recovery only for the pecuniary loss sustained, should be supplemented by Louisiana statutory law which provides a broader remedy for damages.[2]

Pursuant to motions to dismiss of defendants, The Link Belt Company and Road Equipment Company, the district court entered judgment against plaintiffs, limiting them to a claim in Admiralty for pecuniary loss under the Death on the High Seas Act.[3]

Plaintiffs appealed from the judgment and specify the following errors:

"The lower court erred in holding that the plaintiffs, Ella Mae Dubois Dore, individually and as natural tutrix of the minors, Rodney James, Vickie Ann and Jo Ella Dore, had no standing in court; and in holding that the exclusive remedy for the death of Joseph Dore was for 'pecuniary losses' only under the Death on the High Seas Act, 46 U.S.C.A., Section 761, et seq., in striking from the complaint all items of damage other than 'pecuniary loss' and in directing that this case

yond a marine league from the shore of any State * * * the personal representative of the decedent may maintain a suit for damages in the district courts of the United States, in admiralty, * * *."

46 U.S.C. § 762:
"The recovery in such suit shall be a fair and just compensation for the pecuniary loss sustained by the persons for whose benefit the suit is brought * * *."

46 U.S.C. § 763:
"Suit shall be begun within two years from the date of such wrongful act * * *."

46 U.S.C. § 766:
"In suits under this chapter the fact that the decedent has been guilty of contributory negligence shall not bar recovery, but the court shall take into consideration the degree of negligence attributable to the decedent and reduce the recovery accordingly."

46 U.S.C. § 767:
"The provisions of any State statute giving or regulating rights of action or remedies for death shall not be affected by this chapter. Nor shall this chapter apply to the Great Lakes or to any waters within the territorial limits of any State, or to any navigable waters in the Panama Canal Zone.

2. Louisiana statutory law on the subject is found in Louisiana Revised Civil Code Art. 2315, which provides in pertinent part as follows:
"Every act whatever of man that causes damage to another obliges him by whose fault it happened to repair it.
"The right to recover damages to property caused by an offense or quasi of-

fense is a property right which, on the death of the obligee, is inherited by his legal, instituted, or irregular heirs, subject to the community rights of the surviving spouse.
"The right to recover all other damages caused by an offense or quasi offense, if the injured person dies, shall survive for a period of one year from the death of the deceased in favor of: (1) the surviving spouse and child or children of the deceased, or either such spouse or such child or children; (2) the surviving father and mother of the deceased, or either of them, if he left no spouse or child surviving; and (3) the surviving brothers and sisters of the deceased, or any of them, if he left no spouse, child, or parent surviving. The survivors in whose favor this right of action survives may also recover the damages which they sustained through the wrongful death of the deceased. A right to recover damages under the provisions of this paragraph is a property right which, on the death of the survivor in whose favor the right of action survived, is inherited by his legal, instituted, or irregular heirs, whether suit has been instituted thereon by the survivor or not."

3. After this case was appealed the district judge, with our approval, amended his judgment to certify the question as required by Rule 54(b), Federal Rules of Civil Procedure. See Cold Metal Process Co. v. United Eng. & Fdry. Co., 351 U.S. 445, 76 S.Ct. 904, 100 L.Ed. 1311 (1956), where a similar certification after appeal was approved by the Supreme Court.

be removed to the Admiralty side of the Court and that plaintiffs would not have a right to trial by jury."

Decedent, Joseph Dore, an oil field worker, was killed while working on a stationary offshore drilling platform on the outer Continental Shelf in the Gulf of Mexico south of the State of Louisiana, approximately fifty miles seaward from Marsh Island, when a crane which he was operating and which it is alleged was "sold, manufactured, supplied and installed" by defendants, The Link Belt Company and Road Equipment Company, collapsed and fell more than sixty feet.[4] The widow of decedent instituted a civil action on her behalf and that of the minor Dore children, alleging negligence by defendants[5] under the General Maritime Laws, Death on the High Seas Act, 46 U.S.C. § 761 et seq., and Article 2315 of the Revised Civil Code of Louisiana, claiming damages for "loss of love and affection, loss of support and inheritance, loss of material aid and services, loss of parental guidance, loss of society and companionship, pain and suffering, anguish and shock."

Appellants contend that under the "savings-to-suitors" clause, 28 U.S.C. § 1333,[6] and under the Outer Continental Shelf Lands Act, 43 U.S.C. § 1331 et seq.,[7] state remedies are available to them in addition to the remedy provided by the Death on the High Seas Act, 46 U.S. C. § 761 et seq.

---

4. By stipulation between the parties filed subsequent to the hearing and attached to the trial judge's certification under Rule 54(b), Federal Rules of Civil Procedure, it was agreed that the work was being performed on the "outer Continental Shelf" and that the accident occurred in the following manner:

"That the decedent was a crane operator working on a crane on a pedestal on a stationary platform; That the crane was being used to unload a barge or vessel located immediately next to the stationary platform; That while a load was being lifted from the vessel with an intention to place it on the stationary platform, the crane toppled over with the decedent in the crane and fell to the barge or vessel below, which was being unloaded and the decedent was killed when he fell on the barge."

5. There is a lack of complete diversity. Plaintiffs are citizens of Louisiana. Road Equipment Company is a Louisiana corporation. The Link Belt Company is a foreign corporation.

6. 28 U.S.C. § 1333 provides in pertinent part:

"The district courts shall have original jurisdiction, exclusive of the courts of the States of:

"(1) Any civil case of admiralty or maritime jurisdiction, saving to suitors in all cases all other remedies to which they are otherwise entitled."

7. The pertinent parts of the Act provide: 43 U.S.C. § 1332:

"(a) It is declared to be the policy of the United States that the subsoil and seabed of the outer Continental Shelf appertain to the United States and are subject to its jurisdiction, control, and power of disposition as provided in this subchapter."

43 U.S.C. § 1333:

"(a) (1) The Constitution and laws and civil and political jurisdiction of the United States are extended to the subsoil and seabed of the outer Continental Shelf and to all artificial islands and fixed structures which may be erected thereon for the purpose of exploring for, developing, removing, and transporting resources therefrom, to the same extent as if the outer Continental Shelf were an area of exclusive Federal jurisdiction located within a State: * * *.

"(2) To the extent that they are applicable and not inconsistent with this subchapter or with other Federal laws and regulations of the Secretary now in effect or hereafter adopted, the civil and criminal laws of each adjacent State as of August 7, 1953 are declared to be the law of the United States for that portion of the subsoil and seabed of the outer Continental Shelf, and artificial islands and fixed structures erected thereon, which would be within the area of the State if its boundaries were extended seaward to the outer margin of the outer Continental Shelf, and the President shall determine and publish in the Federal Register such projected lines extending seaward and defining each such area. All of such applicable laws shall be administered and enforced by the appropriate officers and courts of the United States. * * * *"

Under the Death on the High Seas Act, when wrongful death occurs beyond a marine league from the shore of any state, a remedy is provided in Admiralty in the United States courts. Under the Outer Continental Shelf Lands Act, the laws of the United States are extended to the subsoil, seabed, artificial islands and fixed structures on the outer Continental Shelf. Laws of adjacent states, to the extent that they are applicable and not inconsistent with the Outer Continental Shelf Act or other federal laws, are under that Act declared to be the law of the United States. The site of decedent's death, fifty miles south of Marsh Island, Louisiana, on the Shelf, is in an area encompassed by both the Death on the High Seas Act and the Outer Continental Shelf Lands Act.

Appellants contend that the language of the Outer Continental Shelf Lands Act which makes applicable the laws of the adjacent state under certain circumstances requires an interpretation that the law of Louisiana is applicable.

Necessarily, Louisiana law must not be inconsistent with federal law to warrant this interpretation. Several inconsistencies between federal law and the law of Louisiana are apparent; for example, the law of Louisiana, which provides inter alia for broad remedies for wrongful death, such as loss of love and affection, etc., limits the time to one year within which an action may be brought and bars recovery because of contributory negligence. In contrast, the provisions of the Death on the High Seas Act provide for pecuniary loss only, a two-year period in which an action may be brought, and mere diminution of damages in the event of comparative negligence.

■ Determination of which law is to apply to cases involving death of a maritime worker on the outer Continental Shelf presents a question of first impression for this Court. In the present case the death occurred beyond a marine league from shore. We have had several occasions, however, to resolve disputes centered around the question of whether federal or state law is applicable to torts, in which a maritime worker suffered personal injuries, occurring on the outer Continental Shelf. We have uniformly held that federal law is the applicable law. Loffland Brothers Company v. Roberts, 5 Cir., 1967, 386 F.2d 540, cert. denied 389 U.S. 1040, 88 S.Ct. 778, 19 L. Ed.2d 830 (1968); Ocean Drilling & Exp. Co. v. Berry Bros. Oilfield Service, 5 Cir., 1967, 377 F.2d 511; Pure Oil Co. v. Snipes, 5 Cir., 1961, 293 F.2d 60.[8] In *Loffland,* the defendant urged that Louisiana law was applicable on the Continental Shelf, under which law recovery for physical injury would have been barred because of plaintiff's contributory negligence, as opposed to diminution of damages under the maritime concept of comparative negligence. In rejecting defendant's argument, we said (386 F.2d at 545):

"In Pure Oil Co. v. Snipes, 293 F.2d 60 (5 Cir. 1961) this Court carefully reviewed the Outer Continental Shelf Lands Act and concluded that Congress deemed the hazards presented by the offshore drilling platforms to be maritime in nature. We therefore held that under the Act federal maritime law was to apply to torts occurring on these offshore platforms. That decision has been consistently followed by this Court."

In *Pure Oil* plaintiff fell through an open space in a platform located on the outer Continental Shelf into the ocean below and suffered severe injuries. Defendants argued that plaintiff's right to recover had prescribed under the one-year Louisiana statute. We disagreed and said that federal and not state law was pertinent. We said (293 F.2d at 64):

"In every sense of the word this happened on the high seas. It did not happen in Louisiana. Nor did it happen

8. See also Touchet v. Travelers Indemnity Company, D.C., W.D.La., 1963, 221 F.Supp. 376.

in waters which Louisiana could regard as within her territorial boundaries. * * *

"We think that a consideration of both intrinsic and extrinsic factors requires the conclusion that it was the intention of Congress that (a) this occurrence be governed by Federal, not State, law, and (b) that the Federal law thereby promulgated would be the pervasive maritime law of the United States. In connection with the latter phase—the choice by Congress of maritime law—it is again important to keep in mind that we are in an area in which Congress has an almost unlimited power to determine what standards shall comprise the Federal law."

While it is true that *Loffland, Pure Oil Co.* and *Ocean Drilling & Exp. Co.* relate to injuries sustained by workmen and not to their death, we do not regard this distinction as decisive. The rationale of these opinions is equally and logically applicable to torts which result in death of a worker.

■ Appellants' further contention that their state remedies are preserved under the "savings-to-suitors" clause of 28 U.S.C. § 1333 is not tenable. We know of no theory in law under which a site in the Gulf of Mexico more than fifty miles from the shore of Louisiana can be considered as part of the State.[9] The conclusion is clear that there is no remedy to save under 28 U.S.C. § 1333. Cf. Jennings v. Goodyear Aircraft Corporation, D.C., D.Del., 1964, 227 F.Supp. 246.

No right or remedy existed for the death on the high seas of a non-seaman maritime worker prior to the enactment of the Death on the High Seas Act. The maritime law provided no cause of action for wrongful death. The Harrisburg, 119 U.S. 199, 7 S.Ct. 140, 30 L.Ed. 358 (1886). Where Congress had remained silent, state death statutes were recognized and enforced by Admiralty courts in claims arising from torts on the high seas. The Hamilton, 207 U.S. 398, 28 S.Ct. 133, 52 L.Ed. 264 (1907). With the passage of the Death on the High Seas Act, it is pertinent to inquire whether state statutes allowing for recovery for wrongful death are pre-empted by the Act. The issue is a novel one for this Court, and the United States Supreme Court has made no pronouncement in this regard.

■ The legislative history indicates that when Congress passed the Death on the High Seas Act it intended the remedy it provided to be an exclusive one. In Higa v. Transocean Airlines, 9 Cir., 1955, 230 F.2d 780, 783, 784, the Court set forth the following colloquy which occurred during the debate in the House of Representatives:

"'Mr. Igoe. Does not the gentleman think that he should inform the gentleman from Ohio (Mr. Ricketts) that *this proceeding will be in admiralty and that there will be no jury*, so that no Member of the House may have any misunderstanding about it? That question was thrashed out and it was decided best not to incorporate into this bill a jury trial because of the difficulties in admiralty proceedings.' (Page 4482. Emphasis added.)

"'Mr. Moore of Virginia. * * * The purpose of this bill, as I understand it, is to give exclusive jurisdiction to the admiralty courts where the accident occurs on the high seas.

---

**9.** The site of the accident, approximately fifty miles seaward of Marsh Island and south of the State of Louisiana, cannot conceivably be considered within the boundary of the State of Louisiana, either under the three-mile limitation of the Submerged Lands Act, 43 U.S.C. § 1301, or by virtue of the pronouncement by the United States Supreme Court in United States v. States of Louisiana, etc., 363 U.S. 1, 80 S.Ct. 961, 4 L.Ed.2d 1025 (1960), restricting Louisiana's submerged lands rights to an area within three geographical miles from the coastline of that State (363 U.S. at 79, 80 S.Ct. 961) but leaving unsettled the location of that coastline (363 U.S. at 65, 79, 80 S.Ct. 961).

" 'Mr. Volstead. That is it.' (Page 4483.) Congressional Record, Volume 59, Part V."

The Ninth Circuit concluded, "Construing the Act's words, if Higa's diversity proceeding at common law were permitted by the High Seas Act it would make superfluous its words 'in admiralty.' "[10]

Appellants call our attention to several federal district court decisions which give effect to state wrongful death statutes in addition to remedies under the Death on the High Seas Act.[11] However, there are other federal district courts whose holdings are to the contrary.[12] The two United States Supreme Court cases cited by appellants, Just v. Chambers, 312 U.S. 383, 61 S.Ct. 687, 85 L.Ed. 903 (1941) and Kernan v. American Dredging Company, 355 U.S. 426, 78 S.Ct. 394, 2 L.Ed.2d 382 (1958), are inapposite to the present case. Both cases are concerned with torts occurring within state territorial waters, not on the high seas. In Just v. Chambers, supra, a yacht owner who subsequently died attempted to limit his liability in claims for injuries sustained by passengers as a result of his alleged negligence on navigable waters within the territorial limits of the State of Florida. In reversing the Fifth Circuit and affirming the district court's finding that under a statute of Florida the claimants' causes of action survived the owner's death, the Supreme Court recognized the "authority of the States to create rights and liabilities with respect to conduct within their borders, when the state action does not run counter to federal laws or the essential features of an exclusive federal jurisdiction." The Court held that it saw "no reason why, under this test, the Florida rule in providing for the survival of a cause of action against a deceased tortfeasor for injuries occurring on navigable waters within the limits of the State should not be applied." (312 U.S. at 391, 61 S.Ct. at 693.) Kernan v. American Dredging Company, supra, is a limitation proceeding in which a claim for damages was filed as the result of the death of a seaman who lost his life on a tug in the Schuylkill River in Philadelphia. Apparently the language to which appellants refer is that contained at page 430 in footnote 4 of 355 U.S., page 397 of 78 S.Ct., where the Supreme Court in dictum says, "Presumably any claims, based on unseaworthiness, for damages accrued prior to the decedent's death would survive, at least if a pertinent state statute is effective to bring about a survival of the seaman's right." That a state death statute will be enforced in Admiralty where death occurs as the result of tortious conduct occurring upon navigable waters of a state within that state's boundaries is of course a basic principle recognized in the savings clause of 28 U.S.C. § 1333, and the uniformity of maritime law is not offended by such enforcement. See The M/V "Tungus" v. Skovgaard, 358 U.S. 588, 79 S.Ct. 503, 508, 3 L.Ed.2d 524 (1959). However, this is not to say that such a state statute would be effective where death occurs not on the territorial waters of a state, not within a marine league from its shores, but more than fifty miles seaward of the shores of that state.

10. Cf. Middleton v. Luckenbach S. S. Co., 2 Cir., 1934, 70 F.2d 326.

11. Safir v. Compagnie Generale Transatlantique, D.C., E.D.N.Y., 1965, 241 F. Supp. 501; Cunningham v. Bethlehem Steel Co., D.C., S.D.N.Y., 1964, 231 F. Supp. 934; Abbott v. United States, D.C., S.D.N.Y., 1962, 207 F.Supp. 468; Williams v. Moran, Proctor, Mueser & Rutledge, D.C., S.D.N.Y., 1962, 205 F.Supp. 208.

12. For holdings contrary to the above cited cases, see Montgomery v. Goodyear Tire & Rubber Company, D.C., S.D.N.Y., 1964, 231 F.Supp. 447; Jennings v. Goodyear Aircraft Corporation, D.C., Del., 1964, 227 F.Supp. 246; Devlin v. Flying Tiger Lines, Inc., D.C., S.D.N.Y., 1963, 220 F.Supp. 924; Wilson v. Transocean Airlines, D.C., N.D.Calif., 1954, 121 F. Supp. 85; Blumenthal v. United States, D.C., E.D.Pa., 1960, 189 F.Supp. 439; Echavarria v. Atlantic & Caribbean Steam Nav. Co., D.C., E.D.N.Y., 1935, 10 F. Supp. 677.

We hold, therefore, that the Death on the High Seas Act provides the exclusive remedy in this case.[13]

Affirmed.

13. Because of our holding we need not consider appellants' further contentions, not strenuously urged, that other remedies such as the law of the domicile of defendants might be applicable, or that because the action includes a claim for breach of implied warranty state law should apply as no such remedy exists under the Death on the High Seas Act.