754 F.2d 1274
 1986 A.M.C. 23, 53 USLW 2491
 Beth A. TALLENTIRE, Plaintiff-Appellant,
v.
OFFSHORE LOGISTICS, INC., et al., Defendants,
Air Logistics, Defendant-Appellee.
Corine Ann Soudelier TAYLOR, Individually, as administratrix
of the estate of Michael John Taylor, and as
natural tutrix of the minor, Leslie Ann
Taylor, Plaintiff-Appellant
Cross-Appellee,
v.
BELL HELICOPTER TEXTRON, a DIVISION OF TEXTRON, INC., Defendant.
Corine Ann Soudelier TAYLOR, etc., Plaintiff-Appellant Cross-Appellee,
v.
AIR LOGISTICS, INC., Defendant-Appellee Cross-Appellant,
v.
HALLIBURTON SERVICES, Intervenor-Appellee.
 Nos. 83-3296, 83-3328.
 United States Court of Appeals,
Fifth Circuit.
 March 15, 1985.
 
 Davidson, Meaux, Sonnier & McElligott, V. Farley Sonnier, Lafayette, La., for plaintiffs-appellants.
 Phelps, Dunbar, Marks, Claverie & Sims, Howard Daigle, Jr., New Orleans, La., for Air Logistics.
 Charles Hanemann, Houma, La., for Taylor.
 Ronald A. Johnson, Johnson & McAlpine, New Orleans, La., for Halliburton Serv.
 Appeal from the United States District Court for the Eastern District of Louisiana.
 Before GARZA, JOLLY and DAVIS, Circuit Judges.
 W. EUGENE DAVIS, Circuit Judge:
 
 
 1
 These consolidated cases stem from the death of two offshore workers in the crash of a helicopter some thirty miles off the Louisiana coast. The helicopter was owned and operated by Air Logistics, a division of Offshore Logistics, Inc., and was manufactured by Bell Helicopter, a division of Textron, Inc. Air Logistics is a division of Offshore Logistics, a Louisiana corporation, (hereafter referred to as Air Logistics); Bell is a Delaware corporation with its principal place of business in Rhode Island. Both actions included claims under the Death on the High Seas Act (DOHSA), 46 U.S.C. Sec. 761 et seq., the Outer Continental Shelf Lands Act (OCSLA), 43 U.S.C. Sec. 1331 et seq., and the law of Louisiana. The district court held that DOHSA furnished Taylor and Tallentire with their exclusive remedy. Air Logistics admitted liability. Bell did not admit liability, but agreed to pay any judgment which Air Logistics was unable to satisfy. Pursuant to the trial judge's pretrial ruling restricting the claims to those arising under DOHSA, and striking all claims founded on Louisiana law, trial was devoted solely to the issue of damages under DOHSA. No evidence of Bell's liability was introduced at trial, and no party appeals the judgment in its favor, thus the only defendant before us is Air Logistics.
 
 
 2
 In this appeal, Taylor and Tallentire press a common claim that Louisiana's wrongful death statute applies to this helicopter crash on the high seas, either of its own force or as adopted federal law through section 1333 of OCSLA. In view of the clear mandate of section 7 of DOHSA reserving to litigants their rights of recovery under state wrongful death acts, we reverse the district court's denial of benefits recoverable under Louisiana law.
 
 
 3
 I. APPLICABILITY OF STATE WRONGFUL DEATH STATUTES TO HIGH SEAS DEATHS
 
 A. BACKGROUND
 
 4
 Today we are invited to make further adjustments in the volatile field of maritime wrongful death and for the sake of clarity, our analysis of the subject requires a brief historical discussion.
 
 
 5
 The jurisprudential and legislative saga leading to this decision began almost a century ago when the Supreme Court held in THE HARRISBURG, 119 U.S. 199, 7 S.Ct. 140, 30 L.Ed. 358 (1886) that the general maritime law of the United States afforded no remedy for wrongful death. The admiralty courts were not entirely stymied by this forced parsimony and state wrongful death acts, if available, were enforced in admiralty to allow recovery in wrongful death cases.[1] This practice was approved by the Supreme Court in the case of a high seas death in THE HAMILTON, 207 U.S. 398, 52 L.Ed. 264, 28 S.Ct. 133 (1907). Though the admiralty courts were disposed to grant a remedy when one could be fashioned,[2] in the case of high seas deaths the coverage supplied by state statutes was not uniform, and did not adequately fill the void left by THE HARRISBURG. This is one of the considerations which led to the passage in 1920 of DOHSA and its companion legislation, the Jones Act (currently codified at 46 U.S.C. Sec. 688 et seq.) See Moragne v. States Marine Lines, 398 U.S. 375, 393-94, 90 S.Ct. 1772, 1783-84, 26 L.Ed.2d 339, 351-53 (1970). Section 1 of DOHSA provides:
 
 
 6
 Whenever the death of a person shall be caused by a wrongful act, neglect, or default occurring on the high seas beyond a marine league from the shore of any state, ... the personal representative of the decedent may maintain a suit for damages in the district courts of the United States, in admiralty, for the exclusive benefit of the decedent's wife, husband, parent, child, or dependent relative against the vessel, person, or corporation which would have been liable if the death had not ensued.
 
 
 7
 46 U.S.C. Sec. 761.
 
 
 8
 After 1920, DOHSA supplied a uniform remedy for deaths occurring over a marine league from shore; within territorial waters, after some initial confusion, state statutes continued to hold sway.[3] The evolution of maritime wrongful death remedies continued in 1970 with Moragne v. States Marine Lines, in which the Supreme Court overruled THE HARRISBURG and established a remedy for wrongful death grounded in the general maritime law of the United States. Six years later, this circuit held in In re S/S HELENA, 529 F.2d 744, 753 (5th Cir.1976), that after Moragne there was no longer any reason for admiralty courts to apply state wrongful death acts in territorial waters. A further critical development occurred in 1978 with Mobil Oil Corp. v. Higginbotham, 436 U.S. 618, 98 S.Ct. 2010, 56 L.Ed.2d 581 (1978), in which the Supreme Court held that damages recoverable under DOHSA may not be supplemented by the Moragne death remedy. Generally, in post-Higginbotham actions by survivors of non-seamen, this circuit was left with the Moragne remedy supreme in territorial waters, DOHSA supreme on the high seas, and state statutes, it was strongly hinted, out of the picture altogether.[4]
 
 
 9
 The problem we have before us now arises because DOHSA permits recovery of only pecuniary damages--lost wages, loss of services, and the like.[5] Many state wrongful death acts, including Article 2315 of the Louisiana Civil Code, allow recovery for non-pecuniary losses such as loss of love and affection. In an effort to recover these non-pecuniary losses, Taylor and Tallentire offer two alternative theories under which the Louisiana statute could apply to their actions. The first is that Article 2315 applies through section 1333 of OCSLA. The second is that DOHSA does not preempt state wrongful death acts, and Article 2315 grants them rights of its own force as state law. We address each of these contentions in turn.[6]
 
 
 10
 B. APPLICATION OF LOUISIANA LAW THROUGH Sec. 1333 OF OCSLA
 
 
 11
 "The purpose of the Lands Act was to define a body of law applicable to the seabed, the subsoil, and the fixed structures such as those in question here on the outer Continental Shelf." Rodrigue v. Aetna Casualty & Surety Co., 395 U.S. 352, 355, 89 S.Ct. 1835, 1837, 23 L.Ed.2d 360, 364 (1969). Section 1333 of OCSLA adopts the law of the adjacent state, including tort law, as surrogate federal law for the area the act covers.[7] This provision was included in OCSLA in recognition of the fact that offshore workers were likely to have significant ties with adjacent states. Since the decedents in this case were platform workers, although their deaths did not occur on a platform, Taylor and Tallentire assert that OCSLA should apply.
 
 
 12
 Assuming that OCSLA does apply, it nonetheless would not permit recovery of non-pecuniary damages via the Louisiana statute. Section 1333 of OCSLA adopts state laws as surrogate federal law only "to the extent that they are applicable and not inconsistent with this subchapter or other federal laws or regulations...." 43 U.S.C. Sec. 1333 (emphasis added). It is established in this circuit that DOHSA applies to crash of a helicopter on the high seas, so Louisiana law could be adopted only to the extent it is not inconsistent with DOHSA.[8] This leaves the far more difficult question of whether state wrongful death statutes are preempted by DOHSA.
 
 C. PREEMPTION OF STATE STATUTES BY DOHSA
 
 13
 The heart of this issue is the interpretation of section 7 of DOHSA:
 
 
 14
 The provisions of any state statute giving or regulating rights of action or remedies for death shall not be affected by this chapter. Nor shall this chapter apply to the Great Lakes or to any waters within the territorial limits of any State, or to any navigable waters in the Panama Canal Zone.
 
 
 15
 46 U.S.C. Sec. 767 (emphasis added).
 
 
 16
 We begin with the proposition that section 7 is broad enough on its face to support Taylor and Tallentire's argument that if a state statute grants a right to recover for a high seas death, it is not preempted by DOHSA. As discussed more fully below, however, there has been considerable uncertainty over the effect of this seemingly simple provision. The heart of the debate over the interpretation of section 7, in turn, is the effect of the ill-starred "Mann Amendment."
 
 
 17
 As originally drafted, section 7 read "[t]he provisions of any State statute giving or regulating rights of action or remedies for death shall not be affected by this act as to causes of action accruing within the territorial limits of any state ...", 59 Cong.Rec. 4482 (1920), a formulation which would obviously allow DOHSA to preempt state remedies on the high seas. During floor debate on the bill, Representative Mann of Illinois introduced an amendment to strike the phrase "as to causes of action accruing within the territorial limits of any state," id. at 4484, leaving the provision in its present form. The debate at the time reflects considerable confusion among the members of Congress concerning the effect of the amendment, a confusion which is reflected over the next sixty years in the conflicting decisions of federal courts interpreting section 7.[9] A number of decisions interpret section 7 as Air Logistics would have us interpret it, to preserve state remedies only in territorial waters.[10] Other decisions take the opposite view, that section 7 is effective to preserve state remedies on the high seas as well.[11] The former position is based primarily on the belief, drawn from the floor debate, that regardless of what Representative Mann intended, Congress as a whole intended DOHSA to be an exclusive remedy. The case most frequently cited for this proposition is Wilson v. Transocean Airlines, 121 F.Supp. 85 (N.D.Cal.1954), in which the court reviewed the legislative history of DOHSA in general, the Mann amendment in particular and concluded:
 
 
 18
 [I]t is not at all clear that the subsequent approval of the amendment should be accepted as an indication that the intent of the Congress coincided with that of the amendment's author. It is equally likely that the approval of the amendment represented no more than the acceptance of what appeared to be an innocuous change in language to facilitate the immediate passage of the legislation.... An ambiguous and ill-considered amendment to the bill, which became the Act, is not [sufficient reason to ignore the original purpose of DOHSA.]
 
 
 19
 Id. at 90-91.
 
 
 20
 The congressional debate reflects a number of differing concerns and beliefs on the part of the legislators. These include whether the federal courts would have exclusive jurisdiction of DOHSA claims and whether causes of action granted by state statutes would be affected or preempted by DOHSA. The debate is not couched in the most precise legal terminology, and it appears that the term "jurisdiction" was used indiscriminately to refer to both the power of state or federal courts to hear a particular case and the power of a state to grant a right of recovery. Thus, at some points it is not entirely certain whether the subject of discussion is the power of state courts to hear DOHSA claims or the power of states to provide a remedy in addition to DOHSA. Some of the congressmen apparently believed that once Congress had legislated in this area, state statutes would be preempted regardless of any language to the contrary.[12] It is certain, however, that Representative Mann intended that if a state remedy was available, it would remain available.[13] After a thorough review of the debate surrounding the Mann amendment to section 7, we agree with the court in Wilson that some members of Congress accepted the amendment so the bill could muster the necessary votes for passage. Nevertheless, the debate reflects an intent by the author of the amendment and others to preserve state remedies and the amendment carried the day. In this circumstance, an attempt to discern the congressional intent from the conflicting statements by participants in the debate is hopeless. It is also unnecessary in light of the clear language of the statute. Absent a clearly-expressed legislative intention to the contrary, the plain words of the statute must ordinarily be regarded as controlling. Escondido Mutual Water v. LaJolla Indians, --- U.S. ----, ----, 104 S.Ct. 2105, 2110, 80 L.Ed.2d 753, 761 (1984). Since the language of section 7 is clear, we conclude that a state statute which is effective to grant rights resulting from deaths on the high seas is not preempted by DOHSA.
 
 
 21
 Air Logistics advances five arguments why section 7 should not be given the interpretation we have given it. Each of these points deserves consideration, although ultimately none is persuasive.
 
 
 22
 i. Dore v. Link Belt Co.
 
 
 23
 As an initial matter, Air Logistics argues that Dore v. Link Belt Co., 391 F.2d 671 (5th Cir.1968), reversed sub nom Rodrigue v. Aetna Casualty & Surety Co., 395 U.S. 352, 89 S.Ct. 1835, 23 L.Ed.2d 360 (1969) controls this case. In Dore, the survivors of a worker killed when he fell from an offshore platform contended, as do the plaintiffs in this case, that in addition to DOHSA they were entitled to invoke the Louisiana death statute either of itself or through OCSLA. This court rejected both contentions, holding that DOHSA was the plaintiff's sole remedy. 391 F.2d at 674-76. The Supreme Court granted certiorari and reversed, holding that since under the terms of OCSLA offshore drilling platforms were to be treated as federal enclaves located in an upland state, the case was not within the admiralty jurisdiction. Even if there were admiralty jurisdiction, DOHSA did not apply because Congress did not intend that result when it adopted the Lands Act. 395 U.S. at 365-66, 89 S.Ct. at 1842, 23 L.Ed.2d at 370. State law became federal law federally enforced as to platform accidents. There is no indication that the Court considered the circuit court holding that DOHSA preempts state statutes. It determined, however, that Louisiana law applied through OCSLA, and reversed the circuit court decision applying DOHSA to the exclusion of state statutes. We therefore do not consider the Dore opinion to control the issue of DOHSA's exclusivity when DOHSA does apply.
 
 
 24
 ii. Mobil Oil Corporation v. Higginbotham
 
 
 25
 A second argument put forward by Air Logistics is that the Supreme Court decision in Mobil Oil Corp v. Higginbotham forecloses supplementation of DOHSA by state statutes.[14] We disagree. Higginbotham dealt solely with whether damages available under DOHSA could be supplemented by the general maritime wrongful death remedy recognized in Moragne v. States Marine Lines. Whether DOHSA preempts state wrongful death remedies was not addressed in the decision. Particularly in light of the interpretation of section 7 of DOHSA set forth above, Higginbotham cannot be extended to answer this question.
 
 
 26
 iii. In Re S/S HELENA
 
 
 27
 Air Logistics also points out that under this court's decision in In Re S/S HELENA, 529 F.2d 744, 753 (5th Cir.1976), state statutes are preempted by the Moragne death remedy when death occurs within territorial waters. We agree that the anomaly of allowing state statutes to operate on the high seas but not in territorial waters is apparent. Air Logistics' argument has logic on its side, but again it does not take into account section 7. The general maritime law preempts state law, but DOHSA preempts the general maritime law, and, as explained, section 7 of DOHSA specifically saves state remedies.
 
 
 28
 iv. Moragne v. States Marine Lines
 
 
 29
 Air Logistics also asserts that section 7 was interpreted by the United States Supreme Court in Moragne and THE TUNGUS v. Skovgaard, 358 U.S. 588, 79 S.Ct. 503, 3 L.Ed.2d 524 (1959) as preserving the effect of state statutes only within territorial waters. In the passages relied on by Air Logistics, however, the Court is simply quoting from the House and Senate reports on DOHSA.[15] With regard to the Moragne opinion in particular, this argument reflects a basic misunderstanding of the context in which the court used this language. The respondent in Moragne argued that since DOHSA applied only to deaths occurring more than a marine league from shore, it evidenced a congressional intent to withhold a federal wrongful death remedy within territorial waters. The Court quoted this legislative history in support of its conclusion that Congress did not extend DOHSA to territorial waters simply because state statutes already provided a remedy in that area. 398 U.S. at 395-97, 90 S.Ct. at 1784-85, 26 L.Ed.2d at 353-55.
 
 
 30
 In THE TUNGUS, the respondent argued that a New Jersey death statute should be applied in admiralty without regard to any of the procedural or substantive limitations New Jersey had placed on the right to recover. The Court noted that to accept this argument would be to infringe on the sovereignty Congress intended the states to retain over deaths in a state's territorial waters, and for this proposition quoted the congressional reports. THE TUNGUS does not consider the application of state statutes beyond territorial waters. From these sketchy references we cannot derive the conclusion that the Supreme Court has interpreted section 7 to preserve state remedies only within territorial waters. In addition, the language in the quoted House and Senate Reports describes section 7 as it was constituted prior to the Mann amendment.
 
 
 31
 v. Nygaard v. Peter Pan Seafoods
 
 
 32
 We recognize that this holding places us in conflict with the Ninth Circuit. In Nygaard v. Peter Pan Seafoods, Inc., 701 F.2d 77, 80 (9th Cir.1983), the Ninth Circuit held that maritime uniformity required the conclusion that DOHSA preempts state statutes. The court stated: "If the federal remedial scheme for death within territorial waters takes precedence over state remedies, then certainly the federal remedial scheme for death on the high seas, where the primacy of federal interests is far clearer, should also take precedence." Id. at 80. The discussion of this issue in Nygaard does not mention section 7 of DOHSA; indeed we have no way of knowing that section 7 was brought to the court's attention.[16] In light of the interpretation of section 7 mapped out above, we disagree with the conclusion reached in Nygaard.[17]
 
 
 33
 Our holding in this case does not promote the uniformity in the maritime law which the Supreme Court has nurtured for many decades, and we may agree with our brothers of the Ninth Circuit that to have state law preempted in territorial waters yet operative on the high seas is "a result as damaging to uniformity in wrongful death actions as it is illogical." 701 F.2d at 80. It is indeed profoundly unsettling that state law will have nothing to do with a claim for wrongful death which occurs on the Mississippi River, yet might apply to the death of an offshore worker forty miles from land, but this is the legacy of eighty-odd years of haphazard evolution in maritime wrongful death remedies. The remedy for wrongful death on the high seas under DOHSA has not changed since 1920, but remedies for maritime wrongful death occurring in inland waters have been altered almost beyond recognition. Prior to Moragne and In Re S/S HELENA, a straightforward interpretation of section 7 resulted in no anomaly--state statutes could apply in territorial waters, state statutes could apply on the high seas. Section 7 is simply out of sync with a changing jurisprudence. Nonetheless, Higginbotham teaches us that DOHSA must take priority over jurisprudential formulations, and this principle holds as true when the result is one we dislike as when it is one we applaud. If section 7 is to be molded to form a symmetrical whole with other developments in maritime wrongful death law, the artisan must be Congress and not this court.
 
 
 34
 We turn next to whether Louisiana has the authority to extend the coverage of its wrongful death remedy to the high seas and if so, whether it has elected to do so.
 
 D. LEGISLATIVE JURISDICTION
 
 35
 Air Logistics argues that the states simply do not have the power to legislate with regard to occurrences outside their territorial boundaries. They contend that as a matter of federalism, "Louisiana can no more enact laws governing death on the high seas than it could enact laws governing deaths in Mississippi." This leads us into the relatively unexplored territory of legislative jurisdiction.[18] Many of the decisions which have considered the question whether DOHSA preempts state statutes have glossed or failed entirely to discuss this critical question, and there is little solid, unambiguous precedent in this area which is of any help. After careful consideration, however, we conclude that in this respect Air Logistics paints with too broad a brush. There are certainly constitutional limits on a state's power to apply its laws to order the rights of individuals, but these limits are not determined entirely by geographic and territorial considerations.
 
 
 36
 From the time of THE HARRISBURG until the passage of the Death on the High Seas Act in 1920, state statutes afforded the only available remedy for deaths on the high seas. The case most often cited as authority for the use of state statutes in admiralty, both before and after the passage of DOHSA, is THE HAMILTON.[19] THE HAMILTON appeared to be based on the theory that the "law follows the flag"--the vessels, since they were owned by Delaware citizens, were part of the territory of Delaware regardless of their location[20]--but its discussion was not limited to that proposition. Justice Holmes initially addressed the power of the State of Delaware to make laws applicable to the high seas, and concluded that if there were no conflict with the Constitution, Delaware could make such laws. The Justice went on to conclude that when Congress was silent on the matter, there was no Constitutional bar to application of the Delaware statute to its own citizens on the high seas. 207 U.S. at 403-04, 28 S.Ct. at 133-34, 52 L.Ed.2d at 269.
 
 
 37
 In Skiriotes v. Florida, 313 U.S. 69, 61 S.Ct. 924, 85 L.Ed. 1193 (1941), THE HAMILTON was affirmed as standing for a considerably broader proposition than simply that the law follows the flag. Skiriotes was charged with violation of a Florida statute which prohibited the collection of sponges with diving equipment. At the time of the offense he was approximately two marine leagues off the shore of Florida. 313 U.S. at 70, 61 S.Ct. at 926, 85 L.Ed. at 1196. In response to Skiriotes' argument that Florida lacked the power to apply this statute outside territorial waters, Justice Hughes observed that "if the United States may control the conduct of its citizens upon the high seas, we see no reason why the State of Florida may not likewise govern the conduct of its citizens upon the high seas with respect to matters in which the state has a legitimate interest and where there is no conflict with acts of Congress." 313 U.S. at 77, 61 S.Ct. at 929, 85 L.Ed. at 1200. This principle was based in part upon THE HAMILTON, as Justice Hughes explained:
 
 
 38
 [T]he principle recognized in THE HAMILTON, supra, was not limited by the conception of vessels as floating territory. There was recognition of the broader principle of the power of a sovereign State to govern the conduct of its citizens on the high seas.... When its action does not conflict with federal legislation, the sovereign authority of the State over the conduct of its citizens upon the high seas is analogous to the sovereign authority of the United States over its citizens in like circumstances.
 
 
 39
 313 U.S. at 78-79, 61 S.Ct. at 930, 85 L.Ed. at 1201.[21]
 
 
 40
 The statute involved in Skiriotes was criminal, but Justice Hughes' interpretation of THE HAMILTON makes it clear that this analysis of legislative jurisdiction is equally applicable to wrongful death statutes. Florida's interest in protecting the sponge fishery, in the absence of conflicting federal law, was sufficient to allow it to order the conduct of its own citizens on the high seas. Given a sufficient interest in a wrongful death occurring outside its territorial waters, and absent conflicting federal law, it follows that a state may also constitutionally apply its own law to order the rights of its citizens with regard to that death.
 
 
 41
 We note that both THE HAMILTON and Skiriotes v. Florida are careful to limit their analysis to the power of a state to attach legal consequences to the acts of their own citizens on the high seas.[22] As Skiriotes expressly notes, "No right of a citizen of any other state is here asserted. The question is solely between appellant and his own state." 313 U.S. at 76, 61 S.Ct. at 929, 85 L.Ed. at 1200. Fortunately, we are not compelled to explore the outer limits of a state's legislative jurisdiction over high seas occurrences since the significant contacts in this litigation are exclusively with Louisiana. Offshore Logistics is a Louisiana corporation and the helicopter was enroute to Houma, Louisiana at the time of the crash. Both decedents were Louisiana residents, and their work activities were centered around the Louisiana offices of the service companies by which they were employed. Both plaintiffs were also Louisiana residents at the time of the crash. In these circumstances, Air Logistics is clearly subject to the substantive law of Louisiana.
 
 
 42
 E. EXTRATERRITORIAL APPLICATION OF ART. 2315
 
 
 43
 What now remains is to determine whether as a matter of Louisiana law these plaintiffs have a claim under the Louisiana statute against this defendant. Article 2315 provides no clue as to whether it is intended to apply to deaths occurring on the high seas. Louisiana decisional law construing Article 2315 also furnishes no concrete guidance concerning whether that provision should have extraterritorial application. It is significant, however, that Louisiana will apply its tort law to an event or a transaction occurring in another state, if Louisiana has a sufficient interest in the transaction. See Jagers v. Royal Indemnity Co., 276 So.2d 309, 313 (La.1973); Romero v. State Farm Mutual Automobile Insurance, 277 So.2d 649, 651 (La.1973). We also note that Louisiana applies its workmen's compensation law to employees meeting certain statutorily-defined conditions, even if the injury occurs in another state, a foreign country, or on the outer Continental Shelf. See Thompson v. Teledyne Movible Offshore, Inc., 419 So.2d 822, 823-25 (La.1982); La.Rev.Stat. 23:1035.1. Workmen's compensation statutes and wrongful death statutes, broadly speaking, have the same purpose: to insure that injured individuals or their survivors are compensated. There can be little doubt that Louisiana has a strong interest in seeing that the survivors of its citizens killed by the fault of another are adequately compensated. It is most reasonable, unless the Louisiana courts or legislature indicate a contrary intent, to assume that the state intended the protection of this law to extend to its constitutional limits. This is particularly so when, as in this case, none of the considerations of comity which influence choice of law in the interstate context are present.
 
 F. RIGHT TO JURY TRIAL
 
 44
 Both Taylor and Tallentire demand a jury trial on their claims under the Louisiana death act. Since Taylor and Offshore Logistics are both Louisiana residents, Taylor's state law claim is cognizable in federal court either as an admiralty action or as a pendent claim to her DOHSA action. Since, in either instance Taylor's case would be in federal court solely by virtue of admiralty jurisdiction, Taylor has no right to a trial by jury.[23]
 
 
 45
 Since Tallentire and Air Logistics are citizens of different states, trial by jury will be available to Tallentire on her Louisiana death action. This is so whether Tallentire's claims are considered as based solely on the Louisiana statute or based on DOHSA and the Louisiana statute.[24]
 
 II. DAMAGES
 
 46
 The district court accepted the projections made by Air Logistics' economist in computing the future earnings of each of the decedents. Taylor and Tallentire both contend their respective awards were inadequate, and contend that the district court erred in a number of respects in computing the awards. Since Tallentire's damage claims must be presented to a jury, we address only Taylor's complaints.
 
 A. Social Security Taxes
 
 47
 In computing future earnings, the defendant's economist deducted social security taxes for the decedent's life span. Taylor in essence argues that social security payments are similar to payments to a pension plan, and that in any case social security deductions are matched by the employer's contribution, so there is no net loss of income. Although this argument has a certain amount of superficial appeal, our cases establish that social security taxes should be deducted in computing future earnings. See Culver v. Slater Boat Co., 688 F.2d 280, 302 (5th Cir.1982), modified in other respects Culver v. Slater Boat Co., 722 F.2d 114 (5th Cir.1983); Madore v. Ingram Tank Ships, Inc., 732 F.2d 475, 479 (5th Cir.1984).
 
 B. Loss of Inheritance
 
 48
 The trial court also denied damages for loss of inheritance. This is a proper element of damages under DOHSA, see Solomon v. Warren, 540 F.2d 777, 790 (5th Cir.1976), cert. dismissed, 434 U.S. 801, 98 S.Ct. 28, 54 L.Ed.2d 59 (1977); National Air Lines, Inc. v. Stiles, 268 F.2d 400 (5th Cir.1959), cert. denied, 361 U.S. 885, 80 S.Ct. 157, 4 L.Ed.2d 121 (1960), but should be awarded only when there is "a reasonable expectation of pecuniary benefit" or a "probability" that the claimed inheritance would have come to the plaintiff. Solomon, 540 F.2d at 790-91; see also Nygaard v. Peter Pan Seafoods, Inc., 701 F.2d at 81. In Solomon v. Warren, several factors were considered in determining whether a reasonable expectation of pecuniary benefit was present: (1) the existence of a will; (2) the fact that plaintiffs were actually legatees in the will; (3) the plaintiffs would be entitled to take under intestate succession even in the absence of a will; (4) the decedent had a history of accumulating property. 540 F.2d at 791. Taylor introduced no evidence of these or other factors which would establish a sufficient probability of inheritance. In light of this, the district court's denial of this item as too speculative was well within its discretion.
 
 C. Loss of Services
 
 49
 The district court also denied Taylor damages for loss of the services of her husband, because no evidence of the value of those services was introduced. Taylor's testimony that the decedent routinely performed repair work on the home and repaired the family automobiles was not contradicted; indeed we note that the defendant's post-trial brief conceded the propriety of damages for loss of services, seeking only to limit the amount. Damages of this sort are, by nature, not calculable with absolute exactness, and there is some merit to Taylor's contention that an expert's valuation of those services would be little better than that of anyone else. We remand this element for reconsideration, and without intimating that those cases furnish the proper measure of damages, commend to the district court's attention Consolidated Machines Inc. v. Protein Products Corp., 428 F.Supp. 209, 230 (M.D.Fla.1976), and the district court's opinion in Higginbotham v. Mobil Oil Corp., 360 F.Supp. 1140, 1144 (W.D.La.1973), reversed on other grounds 545 F.2d 422 (5th Cir.1977), reversed and remanded, 436 U.S. 618, 98 S.Ct. 2010, 56 L.Ed.2d 581 (1978).
 
 
 50
 We have examined appellee's remaining assignments of error with regard to damages, and conclude that these decisions were within the trial court's discretion.
 
 D. Cross Appeal by Air Logistics
 
 51
 Air Logistics has cross appealed, contending that the annual income figure used by the district court to calculate future earnings for Taylor was based on inadmissible testimony. A Mr. Verrett, the district manager of Halliburton, the decedent's employer, testified that figures supplied to him by the company showed that the annual earnings of an employee in the positions to which the decedent would have been promoted were approximately $33,000 in 1981 and approximately $38,000 in 1982, including overtime. The base salary for employees in these positions was approximately $29,000 annually. Mr. Verrett also stated that he personally would have thought the figure would have been greater, perhaps $40,000 annually, but stated that any figure he gave would be a "guess." The district court used a $40,000 annual salary as the base for computing the decedent's future earnings. Air Logistics objects to the use of any figure other than the guaranteed salary testified to by Mr. Verrett, on the basis that the other figures are hearsay.
 
 
 52
 Whatever the merit of Air Logistics' argument that the figures supplied by Mr. Verrett are hearsay, the objection was not adequately preserved for appeal. Although Air Logistics' counsel made an initial objection that the average annual earnings of a special operator were not within Verrett's personal knowledge, plaintiff's counsel replied that he would "clarify that." Verrett then testified to the effect noted above, and defense counsel indicated no further objection to this testimony either then or in his cross-examination. The objection was never ruled upon, and Air Logistics' counsel indicated no dissatisfaction with the state of the record. Having given the trial court no reason to exclude this testimony as hearsay, the objection to the figures supplied by the company for base wages may not be pressed on appeal.[25] Cf. Complete Auto Transit, Inc. v. Wayne Broyles Eng. Corp., 351 F.2d 478, 481-82 (5th Cir.1965). We agree, however, that the $40,000 figure, which Mr. Verrett candidly stated was a guess, should not have been used to calculate the damage award. Use of a "guess" by a witness as a basis for a damage award, when the witness himself states that other evidence is more accurate, is plain error affecting substantial rights. We therefore remand this aspect of Taylor's damage award for reconsideration by the district court.
 
 CONCLUSION
 
 53
 The plain words of section 7 of DOHSA prevent the preemption by DOHSA of the Louisiana state death act. Our desire for a uniform, consistent, scheme of maritime death remedies cannot justify a refusal to follow the legislative will. We also conclude that Louisiana has the authority to apply its death act to its own citizens on the high seas adjacent to its shores and that as a matter of Louisiana law, plaintiffs may assert a claim under the Louisiana death act. Other than the amount of Taylor's annual earnings and the claim for loss of services by his survivors, we find no error in the trial court's computation of Taylor's award under DOHSA.
 
 
 54
 The judgment in Taylor is VACATED, however, for reconsideration of the above discussed items under DOHSA and for further proceedings necessary for the district court to consider plaintiff's claims for non-pecuniary losses under Article 2315 of the Louisiana Civil Code.
 
 
 55
 The judgment in Tallentire is VACATED and REMANDED for trial by jury.[26]
 
 
 56
 E. GRADY JOLLY, Circuit Judge, specially concurring:
 
 
 57
 I concur, but with no minor reservation. The result we reach in this case creates significant problems in the field of maritime law because it defies reason, runs contrary to principles of the general precedent in the field, and creates all sorts of internal inconsistencies in the prosecution of cases dealing with death on the high seas. Most of these problems are noted in Judge Davis' thorough and honest opinion.
 
 
 58
 Notwithstanding the powerful reasons exhorting a result opposite the one we have reached, the language of the statute is plain and clear that state remedies for deaths on the high seas are preserved and not federally preempted, and there is legislative history that clearly supports the plain meaning of the plain words of the statute. I therefore concur, but knowing that this result may create a mess in more than a few cases.
 
 
 59
 GARZA, Circuit Judge, dissenting.
 
 
 60
 I respectfully dissent.
 
 
 61
 The majority begins with the proposition that section 7 of the Death on the High Seas Act (DOHSA) is "broad enough on its face" to permit a state wrongful death action for deaths occurring on the high seas. Indeed, read in a vacuum, section 7 does allow for such a construction. When read in the proper historical perspective, however, I believe that the majority's construction of section 7 is flawed.
 
 
 62
 Historically, state wrongful death actions provided the remedy for deaths occurring on territorial waters. Functionally, there was no remedy for deaths on the high seas. The absence of any remedy for deaths on the high seas was the primary purpose for the enactment of DOHSA. See Moragne v. States Marine Lines, 398 U.S. 375, 398, 90 S.Ct. 1772, 1786, 26 L.Ed.2d 339, 355 (1970). "The express provision that state remedies in territorial waters were not disturbed by the Act ensured that Congress' solution of one problem would not create another by inviting the courts to find that the Act preempted the entire field, destroying the state remedies that had previously existed." Id. In other words, section 7 preserved the then existing state law remedies available for deaths on territorial waters. It did not then, and does not now, expand the exclusive remedy created by DOHSA.
 
 
 63
 I am also compelled to dissent for the reasons expressed by the Ninth Circuit in Nygaard v. Peter Pan Seafoods, Inc., 701 F.2d 77 (1983), in which the court held that DOHSA preempts state wrongful death statutes. Under the majority's opinion, state law is preempted by general maritime law on territorial waters, but operative on the high seas. This result is "as damaging to uniformity in wrongful death actions as it is illogical." Id. at 80.
 
 
 64
 For the foregoing reasons, I would affirm the district court's holding that DOHSA provided Taylor and Tallentire their exclusive remedy.
 
 
 
 [1]
 See, e.g. Southern Pacific Co. v. De Valle Da Costa, 190 F. 689 (1st Cir.1911); International Navigation Co. v. Lindstrom, 123 F. 475 (2d Cir.1903); The City of Norwalk, 55 F. 98 (S.D.N.Y.1893)
 
 
 [2]
 See the often-quoted passage from Chief Justice Chase's opinion in THE SEA GULL, 21 F.Cas. No. 12, 578 p. 909 (C.C.Md.1865):
 [T]here are cases, indeed, in which it has been held that in a suit at law, no redress can be had by the surviving representative for injuries occasioned by the death of one through the wrong of another; but these are all common-law cases, and the common law has its peculiar rules in relation to this subject, ... and certainly it better becomes the humane and liberal character of proceedings in admiralty to give than to withhold the remedy, when not required to withhold it by established and inflexible rules.
 Id. at 910.
 
 
 [3]
 See, e.g. Western Fuel Co. v. Garcia, 257 U.S. 233, 42 S.Ct. 89, 66 L.Ed. 210 (1921); THE TUNGUS v. Skovgaard, 358 U.S. 588, 79 S.Ct. 503, 3 L.Ed.2d 524 (1959)
 
 
 [4]
 See Vaz Borralho v. Keydril Co., 696 F.2d 379, 384 n. 6 (5th Cir.1983) (DOHSA likely preempts state wrongful death remedies; citing Higginbotham )
 
 
 [5]
 46 U.S.C. Sec. 762:
 [T]he recovery in such suit shall be a fair and just compensation for the pecuniary loss sustained by the persons for whose benefit the suit is brought...
 
 
 [6]
 Before venturing into the merits, we note the bases for federal jurisdiction to consider wrongful death claims asserted under Louisiana law by Taylor and Tallentire. In the Tallentire case, there appear to be two separate bases for federal court jurisdiction at the time the suit was filed: (1) diversity of citizenship, since Beth Tallentire is a citizen of Pennsylvania and thus diverse as to both Air Logistics and Bell Helicopter; and (2) admiralty jurisdiction, since the helicopter ferrying the decedents ashore crashed on navigable waters. LeDoux v. Petroleum Helicopters, Inc., 609 F.2d 824, 824 (5th Cir.1980)
 In the Taylor case, since the plaintiff and Air Logistics are both Louisiana residents, the sole jurisdictional base present is admiralty jurisdiction under LeDoux.
 Assuming the existence of a right of action under the Louisiana statute, the federal court has in any case the power to decide this state law claim under its pendent jurisdiction. A DOHSA claim and an article 2315 claim are obviously of the sort that, if considered without regard to their state or federal character, would ordinarily be expected to be tried in one judicial proceeding. United Mine Workers v. Gibbs, 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218, 228 (1966). The decision to exercise pendent jurisdiction is of course a matter of discretion, but when, as here, the considerations of judicial economy and convenience would be served, adjudication of state law claims is to be expected. Hagans v. Lavine, 415 U.S. 528, 545-46, 94 S.Ct. 1372, 1383-84, 39 L.Ed.2d 577, 592-93 (1974). A federal court may exercise its pendent jurisdiction over state law claims when the jurisdictional base of the main claim is in admiralty. E.g. Norfolk & Western Co. v. United States, 641 F.2d 1201, 1208 n. 4 (6th Cir.1980). Since pendent jurisdiction over the Article 2315 claims will be available in any case, the primary effect of which jurisdictional theory is actually used will be on whether plaintiffs are entitled to a jury trial, a matter which is discussed infra.
 
 
 [7]
 43 Sec. 1333:
 (a)(1) The Constitution and laws and civil and political jurisdiction of the United States are extended to the subsoil and seabed of the outer Continental Shelf and to all artificial islands and fixed structures which may be erected thereon for the purpose of exploring for, developing, removing, and transporting resources therefrom, to the same extent as if the outer Continental Shelf were an area of exclusive Federal jurisdiction located within a State: Provided however, That mineral leases on the outer Continental Shelf shall be maintained or issued only under the provisions of this subchapter.
 (2) To the extent that they are applicable and not inconsistent with this subchapter or with other Federal laws and regulations of the Secretary now in effect or hereafter adopted, the civil and criminal laws of each adjacent State as of August 7, 1953 are declared to be the law of the United States for that portion of the subsoil and seabed of the outer Continental Shelf, and artificial islands and fixed structures erected thereon, which would be within the area of the State if its boundaries were extended seaward to the outer margin of the outer Continental Shelf, ...
 43 U.S.C. Sec. 1333 (emphasis in original).
 
 
 [8]
 See Smith v. Pan Air Corp., 684 F.2d 1102, 1111-12 (5th Cir.1982); see also Kimble v. Noble Drilling Corp., 416 F.2d 847, 850 (5th Cir.1969), cert. denied, 397 U.S. 918, 90 S.Ct. 924, 25 L.Ed.2d 99 (1970)
 
 
 [9]
 Congressman Goodykoontz spoke more prophetically than he realized when he remarked during the debate that "the effect of the amendment would be to leave the sentence incomplete and the remaining language, not unlike Mahomet's coffin, suspended between heaven and earth, having no application to anything in particular." Id. at 4486
 
 
 [10]
 See, e.g., Jennings v. Goodyear Aircraft Corp., 227 F.Supp. 246, 248 (D.Del.1964); Wilson v. Transocean Airlines, 121 F.Supp. 85 (N.D.Cal.1954). See also Barbe v. Drummond, 507 F.2d 794, 801 n. 10 (1st Cir.1974); Devlin v. Flying Tiger Lines, Inc., 220 F.Supp. 924 (S.D.N.Y.1963). Other decisions state that DOHSA preempts state remedies without mentioning section 7 at all. E.g., Nygaard v. Peter Pan Seafoods, Inc., 701 F.2d 77, 80 (9th Cir.1983); Montgomery v. Goodyear Tire and Rubber Co., 231 F.Supp. 447, 452 (S.D.N.Y.1964); Blumenthal v. United States, 189 F.Supp. 439, 446 (E.D.Pa.1960)
 
 
 [11]
 See, e.g., In re Complaint of Exxon Corp., 548 F.Supp. 977, 978 (S.D.N.Y.1982); Alexander v. United Technologies Corp., 548 F.Supp. 139, 142 (D.Conn.1982); Rairigh v. Erlbeck, 488 F.Supp. 865 (D.Md.1980); Safir v. Compagnie General Transatlantique, 241 F.Supp. 501, 508 (E.D.N.Y.1965). Cf. Sierra v. Pan American World Airways, 107 F.Supp. 519, 520-21 (D.P.R.1952)
 
 
 [12]
 Mr. MONTAGUE. In reply to the statement of my colleague [Mr. Moore] I will say that jurisdiction upon this subject is found in the Constitution of the United States, and it has been held over and over again by our courts that when the Congress legislates in pursuance of constitutional authority such a law is exclusive. It requires no asservation in the bill to make it exclusive. It is exclusive by virtue of its superior jurisdiction; therefore, I submit, it is needless to amend this bill now and raise the chance of its defeat by adding a mere adjective when by the very force of the Constitution and the law in pursuance thereof it is inherently and necessarily exclusive
 Mr. VOLSTEAD. My impression is it would be exclusive upon the theory the gentlemen [Mr. Montague] suggests.
 * * *
 Mr. VOLSTEAD. The view taken by the parties who drew this bill is that it is exclusive, because, as the gentleman from Virginia [Mr. Montague] pointed out, the power to pass laws on this subject is conferred on Congress in the Constitution, and whenever Congress acts I have no doubt it excludes the power on the part of the State to pass laws on the same subject.
 Mr. DEWALT. If that is true, as to that sort of accidents resulting in death, and if there be no doubt about that, according to the gentlemen from Virginia [Mr. Montague], and the gentleman's interpretation, and it being exclusive only as to matters occurring on the high seas, and also that the States have jurisdiction in regard to matters happening in their territorial limits, what is the use in having section 7?
 
 
 [59]
 Cong.Rec. at 4483-4485
 
 
 [13]
 Mr. MANN of Illinois. Now, I do not know whether I am right or wrong about it, because I have not examined the report on this bill carefully as reported this time. But I remember this bill very distinctly in previous Congresses, and my impression, which very likely may be erroneous, is that the purpose of the bill was to confer jurisdiction in certain cases of death where no jurisdiction now exists. I was under the impression that the bill was not intended to take away any jurisdiction which can now be exercised by any State court. I may be wrong about that. I notice in the report in one place, on page 2, this statement from somebody:
 We are very anxious to have the bill go through in its present simple form, which avoids conflict with State statutes and yet remedies a crying defect in the maritime law as administered in this country--
 and so forth.
 If the amendment which I have suggested should be agreed to, the bill would not interfere in any way with rights now granted by any State statute, whether the cause of action accrued within the territorial limits of the State or not. In other words, if a man had cause of action and could get service, he could sue in a State court and not be required to bring suit in the Federal court.
 * * *
 Mr. SANDERS of Indiana. I would like to know what the effect of this law would be if the amendment offered by the gentleman from Illinois [Mr. Mann] be adopted with reference to this particular question: As thus amended, the first sentence in section 7 will read, "That the provisions of any State statute giving or regulating rights of action or remedies for death shall not be affected by this act." Now, as I understand it, if a person living in Illinois should be in the beneficiary class, should be, say, the widow of a person who had been killed on the high seas, that person may now bring action in personam in the State court of Illinois, and the damages recovered shall then be distributed in accordance with the provisions of the State statutes. Now, if this act is passed as thus amended, it will give that widow the right to elect as to whether she shall proceed under the terms of the act conferring jurisdiction upon the Federal courts with reference to this matter, or whether she shall proceed under the State statute of Illinois. Is that the gentleman's understanding?
 Mr. VOLSTEAD. That is my view of it, and my understanding is that in the form in which the bill at one time was drawn there was a provision something like this, and there was a precautionary clause added to prevent a double action; that is, to prevent action first in the State court and then afterwards an action in the Federal court.
 Mr. SANDERS of Indiana. The reason I raised the question is that you notice here that the action is for the benefit of the husband, parent, or child. My recollection of the action for wrongful death in Illinois is that the child precedes the parent in the beneficial interest. It seems to me this might give conflicting rights. If the right of action were in one person in either case, then, of course, having elected to proceed under one provision, he would be barred from proceeding under the other provision. But suppose that the parent had the right to proceed in admiralty in the Federal courts under this law, and suppose under the State law of Illinois the child had the right to proceed. Now, how are you going to have an election in that case when the right to elect is not in the same person?
 * * *
 Mr. MANN of Illinois. We give a certain class of rights under this act. If this act as originally drawn by the admiralty lawyers was intended for the purpose of taking away jurisdiction now conferred by State statutes, it ought to be very critically examined.
 * * *
 Mr. VOLSTEAD. It would be a good deal simpler if we should leave the statute in the form in which it is drawn.
 Mr. MANN of Illinois. It would be a good deal wickeder.
 
 
 [59]
 Cong.Rec. at 4484-85 (emphasis added)
 
 
 [14]
 Air Logistics relies on the following language:
 We realize that, because Congress has never enacted a comprehensive maritime code, admiralty courts have often been called upon to supplement maritime statutes. The Death on the High Seas Act, however, announces Congress' considered judgment on such issues as the beneficiaries, the limitations period, contributory negligence, survival, and damages. See nn. 6-10, supra. The Act does not address every issue of wrongful-death law, see e.g., n. 15 supra, but when it does speak directly to a question, the courts are not free to "supplement" Congress' answer so thoroughly that the Act becomes meaningless.
 436 U.S. at 625, 98 S.Ct. at 2015, 56 L.Ed.2d at 587.
 
 
 [15]
 [DOHSA] would accomplish that result "for deaths on the high seas, leaving unimpaired the rights under state statutes as to deaths on waters within the territorial jurisdiction of the states ... this is for the purpose of uniformity, as the states cannot properly legislate for the high seas." S.Rep. No. 216, 66th Cong. 1st Sess., 3, 4 (1919); H.R.Rep. No. 674, 66th Cong., 2nd Sess., 3, 4 (1920)
 398 U.S. at 397, 90 S.Ct. at 1786, 26 L.Ed.2d at 355; see also THE TUNGUS, 358 U.S. at 593, 79 S.Ct. at 507, 3 L.Ed.2d at 529.
 
 
 [16]
 The Ninth Circuit's holding in Nygaard was based on the "logical import" of its decision in Nelson v. United States, 639 F.2d 469 (9th Cir.1980), that maritime uniformity requires preemption of state death statutes by the general maritime law. The result reached in Nelson is, of course, the same reached by this circuit in In re S/S HELENA, discussed supra
 
 
 [17]
 We also note that in Barbe v. Drummond, the First Circuit noted in dicta that section 7 could be interpreted to preserve state remedies, "but the better authority rejects this view [citing cases, including Wilson v. Transocean Airlines ]." 507 F.2d at 801 n. 10. Again, as outlined above, the necessary interpretation of section 7 after the Mann amendment is that it allows state remedies to operate on the high seas. The Barbe footnote contains no analysis which undercuts this position
 
 
 [18]
 Simply stated, legislative jurisdiction is the power of a governmental body to apply its laws to create or otherwise affect legal interests. It is to be distinguished from judicial jurisdiction, which is the bare power of a body to hear a case in its court system, regardless of the law applied. See generally Reese, Legislative Jurisdiction, 78 Columbia L.Rev. 1587 (1978). No question of Louisiana's judicial jurisdiction is presented by this case
 
 
 [19]
 E.g., Alexander v. United Technologies Corp., 548 F.Supp. 139, 141 (D.Conn.1982); Safir v. Compagnie General Transatlantique, 241 F.Supp. 501, 506-07 (E.D.N.Y.1965); THE JAMES MCGEE, 300 F. 93, 96 (S.D.N.Y.1923); So. Pac. Co. v. DeValla Da Costa, 190 F. 689, 692 (1st Cir.1911)
 
 
 [20]
 Long before THE HAMILTON, and indeed even before THE HARRISBURG, Judge Pardee of this circuit suggested that Article 2315 of the Louisiana Civil Code might be applied to a death occurring on a vessel owned by Louisiana citizens and based in Louisiana, on the theory that the vessel was a part of Louisiana's territory. THE E.B. WARD, JR., 17 F. 456, 459-60 (C.C.La.1883)
 
 
 [21]
 More recent Supreme Court citations to THE HAMILTON are ambiguous. In Rodrigue v. Aetna, THE HAMILTON was cited for the proposition that had offshore oil rigs been treated as vessels, the admiralty law "supplemented by the law of the jurisdiction of the vessel's owner" would apply to them. 395 U.S. at 355, 23 L.Ed.2d at 364. In Moragne v. States Marine Lines, however, the Court noted that
 The general understanding was that the statutes of the coastal States, which provided remedies for death within territorial waters, did not apply beyond state boundaries. This court had suggested, in an early case where the plaintiff and defendant were of the same State, that the law of that State could be applied to a death on the high seas, if the state intended its law to have such scope. THE HAMILTON ...
 398 U.S. at 393 n. 10, 90 S.Ct. at 1784 n. 10, 26 L.Ed.2d at 352 n. 10.
 These passing references may have some academic interest, but are of little relevance to the concrete issue we must decide.
 It has been suggested that THE HAMILTON may have been implicitly overruled by Southern Pacific Co. v. Jensen, 244 U.S. 205, 37 S.Ct. 524, 61 L.Ed. 1086 (1917), and Western Fuel Co. v. Garcia, 257 U.S. 233, 42 S.Ct. 89, 66 L.Ed. 210 (1921). See Wilson v. Transocean Airlines, 121 F.Supp. at 91-92; Comment, Maritime Wrongful Death After Moragne: The Seaman's Legal Lifeboat, 59 Geo.L.J. 1411, 1423-24 (1971). Jensen is a celebrated and forceful statement of the doctrine that the provisions of state law may not interfere with the essential unity of federal maritime law. Garcia approved the use of a state statute when a death occurred on navigable waters within a state's territorial waters on the basis that the action was "maritime and local in character," and did not significantly threaten this unity. The argument that the Jensen doctrine and the "maritime and local" dicta in Garcia limit the power of a state to apply its laws to a high seas death might have some force were it not for section 7 of DOHSA and Skiriotes v. Florida. We note as well that Jensen itself cites THE HAMILTON in support of the proposition that one of the areas in which the states may legislate without infringing on the necessary maritime uniformity is that of wrongful death. 244 U.S. at 216, 37 S.Ct. at 529, 16 L.Ed. at 1098. See also Oil Workers v. Mobil Oil Corp., 426 U.S. 407, 435-36, 96 S.Ct. 2140, 2153-54, 48 L.Ed.2d 736, 755 (1976) (Stewart, J., dissenting) ("The Court has never struck down a state law on the ground that the States are jurisdictionally incompetent to legislate over matters that occur within the ocean 'territory.' ")
 
 
 [22]
 This is congruent with the conflict of laws principle that a state must have a sufficient interest in a particular transaction or occurrence to apply its own law. Cf. Allstate Ins. Co. v. Hague, 449 U.S. 302, 101 S.Ct. 633, 66 L.Ed.2d 521 (1981); Clay v. Sun Insurance Office, 363 U.S. 207, 80 S.Ct. 1222, 4 L.Ed.2d 1170 (1960); Home Insurance Co. v. Dick, 281 U.S. 397, 50 S.Ct. 338, 74 L.Ed. 926 (1930). See generally, Comment, A Constitutional Analysis of the Mississippi Commercial Code Conflict of Laws Provision, 53 Miss.L.J. 619 (1983)
 
 
 [23]
 E.g., Green v. Ross, 481 F.2d 102 (5th Cir.1973), cert. denied, 414 U.S. 1068, 94 S.Ct. 577, 38 L.Ed.2d 473 (1973); Ashland Oil v. Third Nat. Bank, 557 F.Supp. 862 (E.D.Ky.1983)
 
 
 [24]
 See Fitzgerald v. United States Lines Co., 374 U.S. 16, 83 S.Ct. 1646, 10 L.Ed.2d 720 (1963), Cruz v. Hendy Inter. Co., 638 F.2d 719, 723 (5th Cir.1981)
 
 
 [25]
 Since we remand for proceedings to determine other aspects of Taylor's damage award, the district court may wish to exercise its discretion to take additional evidence on this issue, if justice so requires
 
 
 [26]
 All parties correctly assert that the district court should enter a judgment for a sum certain, rather than simply setting out the method by which damages are to be calculated. On remand, the district court should require the parties to provide the necessary assistance to permit it to enter judgments for a definite sum